| | |
|---|---|
| **FITAPELLI & SCHAFFER, LLP** | **JOSEPHSON DUNLAP, LLP** |
| Joseph A. Fitapelli | Michael A. Josephson (*Pro Hac Vice* |
| Dana Cimera | *forthcoming*) |
| 28 Liberty St. 30th Floor | Richard M. Schreiber(*Pro Hac Vice* |
| New York, NY 10005 | *forthcoming*) |
| Telephone: (212) 300-0375 | 11 Greenway Plaza, Suite 3050 |
| | Houston, Texas 77046 |
| | Telephone: (713) 352-1100 |

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HAROLD FORD, Individually and for Others Similarly Situated, | Case No. 19-11705 |
| v. | Jury Trial Demanded |
| WSP USA, INC. | |

**ORIGINAL COMPLAINT**

1.      Harold Ford (Ford) brings this lawsuit to recover unpaid overtime wages and other damages from WSP USA, Inc. (WSP) under the Fair Labor Standards Act (FLSA).

2.      During the relevant period, WSP utilized the services of personnel like Ford to work on its behalf.

3.      Many of the workers WSP employed, including Ford, were staffed to WSP by third-party entities.

4.      Ford, and the other personnel like him who worked for, or on behalf of WSP, regularly worked more than 40 hours per workweek.

5.      However, Ford and the other workers like him were not paid overtime.

6.      Instead of paying overtime as required by the FLSA, WSP improperly classified these workers as independent contractors and paid them a daily rate with no overtime compensation in violation of the FLSA.

7. Ford brings this collective action to recover the unpaid overtime wages and other damages owed to him and other workers like him.

## JURISDICTION AND VENUE

8. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

10. WSP conducts substantial business operations in this District and Division.

11. WSP is headquartered within this District and Division.

## THE PARTIES

12. During the relevant time period, Ford worked for WSP providing health and safety services.

13. Throughout his employment, WSP paid Ford a day-rate with no overtime compensation and classified him as an independent contractor.

14. Ford's consent to be a party plaintiff is attached as Exhibit A.

15. Ford brings this action on behalf of himself and all other similarly situated personnel who worked for, or on behalf of WSP, who were classified as independent contractors and paid a day-rate with no overtime compensation.

16. Ford and the workers like him were paid a flat amount for each day worked and did not receive overtime for all hours that they worked over 40 hours in a workweek in accordance with the FLSA.

17. The class of similarly situated employees sought to be certified is defined as follows:

>**All personnel that worked for WSP USA, Inc. while classified as independent contractors and paid a day-rate during the last three years. (the "Day Rate Workers")**

18. **WSP USA, Inc.** is a New York company doing business throughout the United States and may be served by serving its registered agent for service of process, CT Corporation System, 28 Liberty St., New York, New York 10005.

## COVERAGE UNDER THE FLSA

19. At all times hereinafter mentioned, WSP has been an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

20. At all times hereinafter mentioned, WSP has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

21. At all times hereinafter mentioned, WSP has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

22. WSP has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or were produced for commerce, such as oilfield equipment, hand tools, computers, automobiles, and cell phones.

23. WSP's annual gross volume of sales made, or business done, has exceeded $10,000,000.00 in each of the past three years.

24. At all relevant times hereinafter mentioned, Ford and the Day Rate Workers were engaged in commerce or in the production of goods for commerce.

25. At all relevant times hereinafter mentioned, WSP treated Ford and the Day Rate Workers as employees and uniformly applied their day-rate pay practice to Ford and the Day Rate


Workers.

26. The misclassification of Ford and the Day Rate Workers as independent contractors does not alter their status as employees for purposes of this FLSA collective action.

### FACTS

27. WSP provides technical expertise and strategic advice to clients in the Transportation & Infrastructure, Property & Buildings, Environment, Industry, Resources (including Mining and Oil & Gas) and Energy sectors, as well as offering project and program delivery and advisory services.

28. To provide services to many of its customers, WSP retains workers like Ford.

29. During the relevant period, WSP contracted with third-party entities to provide it with personnel to work for it or on its behalf, like Ford.

30. Ford worked for WSP in Athens, Texas.

31. WSP and the third-party entities who staffed personnel to WSP to work for or on its behalf jointly determine and share control over the terms and conditions of employment.

32. WSP and the third-party entities who staffed personnel to WSP to work for or on its behalf jointly hired and fired, supervised and controlled, set pay, determined hours, and approved time sheets with respect to these workers.

33. WSP is a joint employer of the personnel staffed to it by the third-party entities.

34. Many of the personnel staffed to WSP, including Ford, were paid on a day-rate basis, misclassified as independent contractors, and make up the proposed putative class of Day Rate Workers.

35. Even if their job titles and precise job duties differed, WSP subjected Ford and the other workers like him to the same or similar illegal pay practices for similar work.

36. Specifically, WSP classified all similarly situated workers as independent contractors and paid them a flat sum for each day worked, regardless of the number of hours that they worked that day (or in that workweek).

37. WSP uniformly failed to pay overtime for the overtime hours Ford and the Day Rate Workers.

38. For example, during the relevant period Ford worked for WSP as an HSE.

39. Throughout his employment, WSP classified Ford as an independent contractor and paid him on a day-rate basis.

40. WSP directed Ford to work 12 (or more) hours a day for as many as fourteen days in a row.

41. Ford worked well in excess of 40 hours each week while employed by WSP, often for weeks at time.

42. The work Ford performed was an essential part of WSP's core business.

43. During Ford's employment with WSP and while he was classified as an independent contractor, WSP exercised control over all aspects of his job.

44. WSP did not require any substantial investment by Ford for him to perform the work required of him.

45. WSP controlled Ford's opportunity for profit and loss by dictating the days and hours he worked and the rate he was paid.

46. Ford was not required to possess any unique or specialized skillset (other than that maintained by all other workers in his respective position) to perform his job duties.

47. While working for WSP, WSP controlled all the significant or meaningful aspects of the job duties performed by Ford.

48. WSP exercised control over the hours and locations Ford worked, tools and equipment used, and rates of pay received.

49. No real investment was required of Ford to perform his job.

50. More often than not, Ford utilized equipment provided by WSP to perform his job duties.

51. Ford did not provide the significant equipment he worked with on a daily basis. WSP or the operator made the large capital investments in buildings, machines, equipment, tools, and supplied in the business in which Ford worked.

52. Ford did not incur operating expenses like rent, payroll, marketing, and insurance.

53. Ford was economically dependent on WSP during his employment with WSP.

54. WSP set Ford's rates of pay, his work schedule, and effectively prevented (or outright prohibited) him from working other jobs for other companies while he was working on jobs for WSP.

55. WSP directly determined Ford's opportunity for profit and loss.

56. Ford's earning opportunity was based on the number of days WSP scheduled him to work.

57. Very little skill, training, or initiative was required of Ford to perform his job duties.

58. Indeed, the daily and weekly activities of Ford and the Day Rate Workers were routine and largely governed by standardized plans, procedures, and checklists created by WSP.

59. Virtually every job function was pre-determined by WSP, including the tools and equipment to use at a job site, the data to compile, the schedule of work, and related work duties.

60. The Day Rate Workers were prohibited from varying their job duties outside of the pre-determined parameters and were required to follow WSP's policies, procedures, and

directives.

61. Ford and the Day Rate Workers performed routine job duties that were largely dictated by WSP.

62. Ford was not employed by WSP on a project-by-project basis.

63. In fact, while Ford was classified as an independent contractor, he was regularly on call for WSP and was expected to drop everything and work whenever needed.

64. Ford reported to a WSP company man.

65. All of the Day Rate Workers working for, or on behalf of WSP, perform similar job duties and are subjected to the same or similar policies and procedures, which dictate the day-to-day activities performed by each person, regardless of the third-party entity they were staffed through.

66. The Day Rate Workers working for, or on behalf of WSP, also worked similar hours as Ford and were denied overtime as a result of the same illegal pay practice, regardless of the third-party entity they were staffed through.

67. All of the Day Rate Workers working for, or on behalf of WSP, all worked in excess of 40 hours each week and were often scheduled to work 12-hour shifts (at a minimum) for weeks at a time, regardless of the third-party entity they were staffed through.

68. Instead of paying them overtime, WSP paid Ford and the Day Rate Workers a day-rate and misclassified them as independent contractors.

69. WSP denied Ford and the Day Rate Workers overtime for hours worked in excess of 40 hours in a single workweek.

70. Ford and the Day Rate Workers were never paid on a salary basis. They never received any guaranteed weekly compensation from WSP irrespective of days worked (i.e., the

only compensation they received was the day-rate they were assigned for all hours worked in a single day or week).

71. WSP's policy of classifying Ford and the Day Rate Workers like him as independent contractors and failing to pay them overtime, violates the FLSA because these workers are, for all purposes, non-exempt workers.

72. It is undisputed that the Day Rate Workers are working long hours outside in harsh elements.

73. Because Ford and the Day Rate Workers like him were misclassified as independent contractors by WSP, they should receive overtime for all hours worked in excess of 40 hours in each workweek.

74. WSP's day-rate system violates the FLSA because Ford and the Day Rate Workers like him did not receive any overtime pay for hours worked over 40 hours each week.

## FLSA VIOLATIONS

75. As set forth herein, WSP has violated, and is violating, Section 7 of the FLSA, 29 U.S.C. § 207, by employing employees for workweeks longer than 40 hours without paying them overtime.

76. WSP knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Ford and the Day Rate Workers like him overtime compensation.

77. WSP's failure to pay overtime compensation to these workers was neither reasonable, nor was the decision not to pay overtime made in good faith.

78. Accordingly, Ford and the Day Rate Workers like him are entitled to overtime wages under the FLSA in an amount equal to 1 and ½ times their rate of pay, plus liquidated damages, attorney's fees and costs.

**COLLECTIVE ACTION ALLEGATIONS**

79. The illegal pay practices WSP imposed on Ford were likewise imposed on the Day Rate Workers working for, or on behalf of, WSP through third-party entities.

80. Numerous individuals were victimized by WSP's pattern, practice, and policy which is in willful violation of the FLSA.

81. Based on his experiences and tenure with WSP, Ford is aware that such illegal practices were imposed on the members of the Putative Class.

82. Ford and the Day Rate Workers like him were all improperly classified as independent contractors and not afforded the overtime compensation when they worked in excess of forty hours per week.

83. WSP's failure to pay wages and overtime compensation at the rates required by federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of any of the Day Rate Workers like Ford.

84. Ford's experiences are therefore typical of the Day Rate Workers who worked for, or on behalf of, WSP.

85. The specific job titles or precise job locations of the various members of the Day Rate Workers do not prevent collective treatment.

86. Ford has no interests contrary to, or in conflict with, the members of the Day Rate Workers. Like each member of the Day Rate Workers, Ford has an interest in obtaining the unpaid overtime wages owed under federal law.

87. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

88. Absent this action, the Day Rate Workers likely will not obtain redress of their injuries and WSP will reap the unjust benefits of violating the FLSA.

89. Furthermore, even if some of the Day Rate Workers could afford individual litigation against WSP, it would be unduly burdensome to the judicial system.

90. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the Day Rate Workers and provide for judicial consistency.

91. Ford's claims are similar to the claims of the Day Rate Workers who worked for, or on behalf of, WSP who were classified as independent contractors and paid a day-rate with no overtime compensation. Ford and the other workers like him sustained damages arising out of WSP's illegal and uniform employment policy.

92. Ford knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

93. Even if the number of hours worked by the workers like Ford varies, the proof and method for calculating damages is common.

94. Further, there is no detraction from the common nucleus of liability facts.

### JURY DEMAND

95. Ford demands a trial by jury.

### RELIEF SOUGHT

96. WHEREFORE, Ford prays for judgment against WSP as follows:

   a. An order allowing this action to proceed as a collective action under the FLSA and directing notice to all Day Rate Workers who WSP classified as independent contractors and paid a day-rate during the last three years;

    b. For an Order pursuant to Section 16(b) of the FLSA finding WSP liable for unpaid back wages due to Ford and the Day Rate Workers like him for liquidated damages equal in amount to their unpaid compensation;

    c. For an Order awarding attorneys' fees, costs and pre- and post-judgment interest; and

    d. For an Order granting such other and further relief as may be necessary and appropriate.

Dated:    New York, New York
              December 20, 2019

Respectfully submitted,

*/s/ Dana Cimera*
Dana M. Cimera
**FITAPELLI & SCHAFFER, LLP**
Joseph A. Fitapelli
Dana M. Cimera
28 Liberty Street, 30th Floor
New York, NY 10005
Telephone: (212) 300-0375


**Michael A. Josephson**
Texas State Bar No. 24014780
**Andrew Dunlap**
Texas State Bar No. 24078444
**Richard M. Schreiber**
Texas State Bar No. 24056278
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
rschreiber@mybackwages.com

**AND**

**Richard J. (Rex) Burch**
Texas State Bar No. 24001807
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**