UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HAROLD FORD, | |
| Plaintiff, | 19 Civ. 11705 (LGS) |
| -against- | |
| WSP USA INC., | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

AKIN GUMP STRAUSS HAUER & FELD LLP

Gregory W. Knopp
New York Bar No. 2892909
1999 Avenue of the Stars, Suite 600
Los Angeles, CA 90067
Telephone:    310.229.1000
Facsimile:    310.229.1001
gknopp@akingump.com

Nathan J. Oleson (*pro hac vice*)
Joshua K. Sekoski (*pro hac vice*)
Zara H. Shore (*pro hac vice*)
2006 K Street, NW
Washington, DC 20006
Telephone:    202.887.4000
Facsimile:    202.887.4288
noleson@akingump.com
jsekoski@akingump.com
zshore@akingump.com

*Counsel for Defendant WSP USA Inc.*

**TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT.........................................................................................1

II.     BACKGROUND ..........................................................................................................2

III.    SUMMARY JUDGMENT STANDARD ........................................................................5

IV.     ARGUMENT ................................................................................................................5

        A.      Ford Must Prove At Least That WSP Recklessly Disregarded The Law.................6

        B.      Ford Cannot Prove A Willful Violation. ................................................................8

                1.      Ford Has No Evidence That WSP Knowingly Violated The FLSA. ...........8

                2.      Ford Cannot Prove That WSP Recklessly Disregarded The Law. ...............9

                        a.      Under The Relevant Factors, A Finding Of Joint
                                Employment Is Far From Obvious. .............................................10

                        b.      Ford Also Cannot Prove That WSP Willfully Underpaid
                                Him. ..........................................................................................17

V.      CONCLUSION............................................................................................................19

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
   47 U.S. 242 (1986)..................................................................................................5

*Barfield v. N.Y.C. Health & Hospitals Corp.*,
   537 F.3d 132 (2d Cir. 2008).......................................................................7, 10, 11

*Bowrin v. Catholic Guardian Soc.*,
   417 F. Supp. 2d 449 (S.D.N.Y. 2006).....................................................................7, 9

*Callari v. Blackman Plumbing Supply, Inc.*,
   988 F. Supp. 2d 261 (E.D.N.Y. 2013) ................................................................5, 8

*Carter v. Dutchess Cmty. Coll.*,
   735 F.2d 8 (2d Cir. 1984) ....................................................................................10

*Colella v. City of New York*,
   986 F. Supp. 2d 320 (S.D.N.Y. 2013)...................................................................7

*In re Domino's Pizza*,
   No. 16-cv-2492 (AJN), 2018 WL 4757944 (S.D.N.Y. Sept. 30, 2018) .................16

*Edwards v. City of New York*,
   No. 08-cv-3134 (DLC), 2011 WL 3837130 (S.D.N.Y. Aug. 29, 2011)....................6

*Freeman v. MedStar Health Inc.*,
   187 F. Supp. 3d 19 (D.D.C. 2016) .........................................................................8

*Godlewska v. HDA*,
   916 F. Supp. 2d 246 (E.D.N.Y. 2013) ........................................................ *passim*

*Gustafson v. Bell Atlantic Corp.*,
   171 F. Supp. 2d 311 (S.D.N.Y. 2001)..................................................................6, 7

*Hobbs v. Petroplex Pipe and Constr., Inc.*,
   360 F. Supp. 3d 571 (W.D. Tex. 2019)...................................................................9

*Hugee v. SJC Grp., Inc.*,
   No. 13-cv-0423 (GBD), 2013 WL 4399226 (S.D.N.Y. Aug. 14, 2013) .................15

*Island Two LLC v. Island One, Inc.*,
   No. 13-cv-02121 (LGS), 2015 WL 1026495 (S.D.N.Y. Mar. 9, 2015) ...................5

*Jacobson v. Comcast Corp.*,
   740 F. Supp. 2d 683 (D. Md. 2010).................................................................12, 17

*Jean-Louis v. Metro. Cable Commc'ns, Inc.*,
    838 F. Supp. 2d 111 (S.D.N.Y. 2011)................................................................. *passim*

*June-IL Kim v. SUK Inc.*,
    No. 12-cv-1557(ALC), 2014 WL 842646 (S.D.N.Y. Mar. 4, 2014) ..........................................6

*Martin v. Sprint United Mgmt. Co.*,
    273 F. Supp. 3d 404 (S.D.N.Y. 2017)................................................................. *passim*

*McLaughlin v. Richland Shoe Co.*,
    486 U.S. 128 (1988)..........................................................................6, 8, 17, 18

*Monzano-Moreno v. Libqual Fence Co., Inc.*,
    No. 18-cv-0161 (MKB), 2021 WL 730663 (E.D.N.Y. Feb. 5, 2021) .....................................16

*Moreau v. Air France*,
    356 F.3d 942 (9th Cir. 2004) ...........................................................................17

*Parada v. Banco Industrial de Venezuela, C.A.*,
    753 F.3d 62 (2d Cir. 2014).........................................................................6, 18

*Pinovi v. FDD Enters., Inc.*,
    13 Civ. 2800, 2015 WL 4126872 (S.D.N.Y. July 8, 2015) ...........................................1, 9

*Rosario v. Mis Hijos Deli Corp.*,
    No. 15-cv-6049-LTS-DCF, 2018 WL 4636822 (S.D.N.Y. Sept. 27, 2018).............................5, 17

*Williams v. Epic Security Corp.*,
    358 F. Supp. 3d 284 (S.D.N.Y. 2019)................................................................. *passim*

*Young v. Cooper Cameron Corp.*,
    No. 04-cv-5968, 2008 WL 4865201 (S.D.N.Y. Nov. 3, 2008)............................................9

*Zheng v. Liberty Apparel Co. Inc.*,
    355 F.3d 61 (2d Cir. 2003)........................................................................... *passim*

**Statutes**

29 U.S.C. § 203(d) ..................................................................................10

29 U.S.C. § 255(a) ....................................................................................6

29 U.S.C. § 260 .......................................................................................7

**Other Authorities**

Fed. R. Civ. P. 56(a) .................................................................................5

Pursuant to Federal Rule of Civil Procedure 56, Local Civil Rule 7.1, this Court's

Individual Rules and Procedures for Civil Cases, and this Court's March 11, 2021 order [Dkt.

No. 71], Defendant WSP USA Inc. ("WSP") submits this memorandum of law in support of its

motion for partial summary judgment against plaintiff Harold Ford.

## I.    PRELIMINARY STATEMENT

For two months in 2018, Harold Ford worked for Quality Project Solutions Inc. ("QPS"),

which provides safety personnel to its clients.  QPS assigned him to work on a construction

project for one of those clients, WSP, and paid him at least $400 per day.  Ford now claims that,

under the Fair Labor Standards Act ("FLSA"), he is entitled to additional pay for overtime hours.

He further claims that—despite being hired, paid, and fired by QPS alone—*WSP* is liable for the

alleged violation as a "joint employer."  While WSP thoroughly disagrees, that claim is not the

subject of this motion.  Rather, by this motion, WSP merely seeks a ruling that Ford cannot prove

that it "willfully" violated the FLSA.

The undisputed facts preclude Ford from satisfying his burden of proving a willful

violation.  This onerous standard requires him to establish not just that WSP was a joint

employer, but that WSP either *knew* that its conduct was unlawful or acted recklessly in the face

of a *clear legal obligation* to treat Ford as its employee.  Despite discovery closing months ago,

Ford has absolutely no evidence that WSP knowingly flouted the law.  The record is devoid of

the types of evidence that courts cite as proof of willfulness, such as an illicit motivation by the

employer or a prior court ruling that put the employer on notice of its alleged misconduct.

Ford likewise cannot prove that WSP acted recklessly.  In this regard, he must establish

that the joint employment relationship was "*so obvious* that [WSP] must have been aware of it."

*Pinovi v. FDD Enters., Inc.*, 13 Civ. 2800, 2015 WL 4126872, at *4 (S.D.N.Y. July 8, 2015)

(emphasis added).  Joint employment was far from "obvious" here.  Indeed, the factors that courts consider in evaluating alleged joint employment overwhelmingly favor WSP.  For example, WSP could not hire or fire Ford; Ford performed his work under minimal supervision by WSP; WSP did not pay Ford or determine his rate or method of pay; Ford did not work on WSP's premises; WSP did not provide the key equipment (Ford's computer and protective gear); QPS was free to (and did) provide its employees to clients other than WSP; and WSP engaged QPS by the project, rather than indefinitely.

In short, many, if not most, of the relevant factors clearly weigh *against* a finding of joint employment or, at minimum, present close questions.  With the alleged joint employment substantially in doubt, Ford could not possibly prove, as he must, that his employment status was so clear that WSP acted in deliberate disregard of the law by treating him as it did.

For these reasons, among others explained below, the Court should grant this motion and dismiss Ford's claim for a willful violation of the FLSA.

## II.  BACKGROUND

WSP is an engineering firm.  *See* Def.'s Rule 56.1 Statement of Material Undisputed Facts ("UF") ¶ 1.  Among other services, WSP assists oil and gas industry clients by designing and managing the construction or refurbishment of underground storage facilities for liquid and gaseous hydrocarbons.  *Id*.  With respect to the construction and refurbishment projects, WSP serves as a general contractor, coordinating various subcontractors that perform different aspects of the work.  *Id.* ¶ 2.

WSP provides health, safety, and environmental ("HSE") support to ensure that the contractors perform the construction safely.  *Id.* ¶ 3.  For some projects, WSP engages another

company to provide HSE professionals, either because WSP is required to do so (by a client or by law) or because a subcontractor does not satisfy the project's HSE standards.  *Id.*

QPS is one such provider of HSE professionals.  *Id.* ¶ 4.  QPS is duly organized under the laws of the State of Louisiana, and it "provides project staffing, consulting, recruiting, and technical services to all aspects of the oil and gas, petrochemical, construction, manufacturing, energy, and renewable resource industries."  *Id.*

In September 2018, WSP and QPS entered into a Master Service Agreement ("MSA"), whereby QPS would provide HSE personnel "as needed."  *Id.* ¶ 5.  The MSA specifies that QPS performs its work "as an independent contractor and not as [WSP's] agent or employee."  *Id.*  In addition, QPS agreed to "observe and abide by all applicable laws, regulations [and] ordinances" and to provide its services "in compliance with all applicable laws, rules, and regulations."  *Id.*

Pursuant to the agreement, QPS provided HSE professionals, including Ford, to WSP for a group of projects for WSP's client, Atmos Energy Corporation, a natural gas distributor.  *Id.* ¶ 10.  Ford is a highly trained and experienced HSE professional, having worked in this capacity for more than a dozen companies over the course of 20 years, usually as an independent contractor.  *Id.* ¶ 8.  QPS hired Ford in March 2019.  *Id.* ¶ 9.  QPS then trained Ford at its expense.  *Id.* ¶ 11.  Following the training, and after WSP cleared Ford to work on its projects, QPS's Chief Executive Officer and President, Robley Dugas, assigned Ford to the Atmos Energy projects, which were already underway and which WSP expected to last for another couple of months.  *Id.* ¶ 10.  Notably, QPS had other customers, and Ford was free to work for those customers when not working on the Atmos Energy projects.  *Id.* ¶ 16.  QPS also had the authority to remove Ford from the Atmos Energy project and assign him to other jobs.  *Id.*

QPS was responsible for paying Ford's wages.  *Id.* ¶ 20.  It paid him a fixed amount per day, at least $400, regardless of the hours worked.  *Id*.  QPS alone determined how, and how much, to pay Ford throughout his work on the Atmos Energy projects.  *Id.*  In fact, WSP was not aware of QPS's pay practices until after Ford filed this lawsuit.  *Id.* ¶ 21.

 Once on the Atmos Energy projects, Ford was one of several HSE professionals responsible for ensuring that the contractors complied with applicable safety regulations and the project's safety plan.  *Id.* ¶ 12.  Ford's work took place at premises owned or leased by Atmos Energy.  *Id.* ¶ 13.  In his role as an HSE professional, Ford supported HSE activities at the worksite, including by attending safety meetings, monitoring the site for safety compliance, and submitting to QPS and WSP a report at the end of each shift documenting what he had observed.  *Id.* ¶ 17.  Ford used a computer provided by QPS and personal protective equipment that he provided himself.  *Id.* ¶ 14.

In May 2019, two months after hiring Ford, QPS fired him following a dispute about mileage reimbursement.  *Id.* ¶ 25.  Dugas made the decision to terminate Ford's employment.  *Id.*  WSP was not involved in that decision.  *Id.*

On December 20, 2019, Ford filed this putative collective action against WSP (but not QPS), claiming that WSP jointly employed him with QPS and is liable for QPS's alleged failure to pay overtime wages as required by the FLSA.  *See* Dkt. No. 1 (Complaint) ¶¶ 31-33.  Ford also claims that WSP "willfully" violated the law and, as a result, the statute of limitations for his claim (and the claims of the putative collective members) extends to three years.  *Id.* ¶¶ 76, 80.

Notably, despite claiming that WSP violated the law "willfully," before filing suit, Ford never complained to WSP about his pay or asserted that WSP employed him.  UF ¶ 22.  In fact, Ford cannot point to any other lawsuit in which an HSE professional ever asserted such claims.

4

Nor can he identify any finding by a court or agency that WSP jointly employed HSE professionals provided by another company.

## III.   SUMMARY JUDGMENT STANDARD

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Where the non-moving party bears the burden of proof as to the claim at issue, summary judgment is warranted if that party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Island Two LLC v. Island One, Inc.*, No. 13-cv-02121 (LGS), 2015 WL 1026495, at *4 (S.D.N.Y. Mar. 9, 2015) (Schofield, J.) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  Moreover, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 47 U.S. 242, 247-48 (1986) (emphasis in original).

## IV.   ARGUMENT

WSP is entitled to summary judgment on Ford's claim that the company "willfully" violated the FLSA because, as shown below, Ford cannot prove, as he must, that WSP knowingly or recklessly disregarded a known legal obligation.  Where, as here, a plaintiff lacks evidence to support a finding of willfulness, courts routinely reject that claim on summary judgment, even if the underlying claim survives.  *E.g.*, *Rosario v. Mis Hijos Deli Corp.*, No. 15-cv-6049-LTS-DCF, 2018 WL 4636822, at *8, 10 (S.D.N.Y. Sept. 27, 2018) (denying defendant summary judgment regarding alleged status as employer but granting summary judgment as to willfulness); *Callari v. Blackman Plumbing Supply, Inc.*, 988 F. Supp. 2d 261, 279-81 (E.D.N.Y.

2013) (denying defendants summary judgment based on exemption defenses but granting summary judgment as to willfulness); *Gustafson v. Bell Atlantic Corp.*, 171 F. Supp. 2d 311, 323-27 (S.D.N.Y. 2001) (holding that defendant misclassified plaintiff as independent contractor but granting defendant summary judgment as to willfulness); *Edwards v. City of New York*, No. 08-cv-3134(DLC), 2011 WL 3837130, at *5, *9-10 (S.D.N.Y. Aug. 29, 2011) (granting defendants summary judgment as to willfulness even though overtime claim remained).

    **A.**    **Ford Must Prove At Least That WSP Recklessly Disregarded The Law.**

 "Ordinary violations of the FLSA" are subject to a two-year limitations period. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1988).  The FLSA extends this period to three years only if the plaintiff proves a "willful" violation of the statute.  *Id.*; 29 U.S.C. § 255(a).

Willfulness demands a heightened showing of culpability.  "The fact that Congress did not simply extend the limitations period to three years, but instead adopted a two-tiered statute of limitations, makes it obvious that Congress intended to draw a *significant* distinction between ordinary violations and willful violations."  *McLaughlin*, 486 U.S. at 132.  Specifically, to establish a willful violation, the plaintiff must prove that the defendant "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."  *Id.* at 133.  "Reckless disregard involves actual knowledge of a legal requirement, and deliberate disregard of the risk that one is in violation."  *Williams v. Epic Security Corp.*, 358 F. Supp. 3d 284, 303 (S.D.N.Y. 2019) (internal quotation marks and citation omitted).

A showing that the employer acted unreasonably or negligently is insufficient to meet this standard:  "If an employer acts unreasonably, but not recklessly, in determining its legal obligation, its action should not be considered willful."  *Parada v. Banco Industrial de Venezuela, C.A.*, 753 F.3d 62, 71 (2d Cir. 2014); *see also June-IL Kim v. SUK Inc.*, No. 12-cv-

1557(ALC), 2014 WL 842646, at *7 (S.D.N.Y. Mar. 4, 2014) (no willfulness despite proof that defendants "fail[ed] to post required labor notices or consult an attorney on their FLSA responsibilities" because "[a]t best, this is negligence, but a willful violation requires more"); *Colella v. City of New York*, 986 F. Supp. 2d 320, 337 (S.D.N.Y. 2013) ("The Supreme Court has rejected making the question of willfulness 'turn on whether the employer sought legal advice' because that would 'permit a finding of willfulness to be based on nothing more than negligence.'") (quoting *McLaughlin*, 486 U.S. at 134-35).

Willfulness also is distinct from the "good faith" defense, which permits the Court to deny liquidated damages to the plaintiff notwithstanding a violation. *See* 29 U.S.C. § 260.  The good faith defense requires that the employer prove "that it took active steps to ascertain the dictates of the FLSA and then act to comply with them." *Barfield v. N.Y.C. Health & Hospitals Corp.*, 537 F.3d 132, 150 (2d Cir. 2008) (internal quotation marks and citation omitted).  By contrast, an employer need not show affirmative efforts to comply with the FLSA to avoid a finding of willfulness. *E.g.*, *Gustafson*, 171 F. Supp. 2d at 323-27 (awarding liquidated damages because defendants "offer[ed] no evidence to establish that the Company took active steps to ascertain its compliance with the FLSA," but holding that "the plaintiff [did] not offer sufficient evidence to carry his burden of proving a willful or reckless violation of the FLSA").

In short, to establish willfulness, only proof of "*deliberate disregard*" of a known legal requirement will suffice.  *Williams*, 358 F. Supp. 3d at 303 (emphasis added); *see also Bowrin v. Catholic Guardian Soc.*, 417 F. Supp. 2d 449, 471-76 (S.D.N.Y. 2006) (dismissing willfulness

claim on summary judgment because plaintiffs "have not presented evidence that [the employer] *knew* it was violating the FLSA").[1]

### B.     Ford Cannot Prove A Willful Violation.

Regardless of whether fact disputes preclude either party from seeking summary judgment on Ford's central theory that WPS jointly employed him, the question whether WSP *willfully* violated the FLSA is ripe for resolution.  Ford cannot cite any evidence whatsoever that WSP knowingly violated the law.  Nor can he show that WSP recklessly disregarded its alleged obligation to treat Ford as its own employee—or even that WSP knew that Ford was not paid in accordance with the FLSA.  Rather, as shown below, ample evidence supports WSP's position that no employment relationship existed.  Given this evidence, regardless of whether Ford ultimately can prove joint employment and an underlying violation of the FLSA, he cannot satisfy his burden of proving that WSP willfully violated the statute.

### 1.     Ford Has No Evidence That WSP Knowingly Violated The FLSA.

Despite completing discovery (*see* Dkt. No. 44), Ford has adduced no evidence suggesting that WSP "knew" that "its conduct was prohibited by the statute." *McLaughlin*, 486 U.S. at 134.  Nothing in the record remotely suggests that WSP had "actual knowledge" of a legal requirement to treat Ford as its own employee and that he was not paid in accordance with the FLSA.  *See Williams*, 358 F. Supp. 3d at 303.  For example, before filing the lawsuit, Ford

---

[1] The Court can adjudicate the willfulness claim, even though Ford's individual claim accrued within the two-year limitations period.  *See Callari*, 988 F. Supp. 2d at 281 ("[B]ecause the Plaintiff in this case has offered no proof to establish that the Defendants either knew or recklessly disregarded FLSA requirements when it classified him as an exempt employee, the Court finds that the three-year statute of limitations does not apply to the Plaintiff's FLSA collective action claim."); *see also Freeman v. MedStar Health Inc.*, 187 F. Supp. 3d 19, 25 (D.D.C. 2016) ("[W]ithout a named plaintiff who retains a viable claim that is the same as the one to be prosecuted by members of a specific proposed collective, the Court cannot 'conditionally certify' that collective.").

never once complained that WSP jointly employed him or was responsible for his pay.  *See* UF ¶ 22.  Nor can Ford identify any other HSE professional who ever made a similar claim, let alone a judgment by a court or agency on this issue.  *See Hobbs v. Petroplex Pipe and Constr., Inc.*, 360 F. Supp. 3d 571, 584 (W.D. Tex. 2019) (defendant did not willfully violate the FLSA where "Plaintiffs failed to show that any complaints were made with regard to Defendant's pay structure and that Defendant failed to or ignored such complaints") (citing *Ikossi-Anastasiou v. Bd. of Supervisors of Louisiana State Univ.*, 579 F.3d 546, 553 (5th Cir. 2009)).

The absence of any such evidence precludes Ford from proving that WSP knowingly violated the law.  *See Bowrin*, 417 F. Supp. 2d at 471-76 (dismissing willfulness claim on summary judgment because "Plaintiffs have not presented evidence that [the employer] *knew* it was violating the FLSA") (emphasis in original); *compare Young v. Cooper Cameron Corp.*, No. 04-cv-5968, 2008 WL 4865201, at *6 (S.D.N.Y. Nov. 3, 2008) (finding willful violation where employer ostensibly hired plaintiff into exempt job because it "wanted to avoid paying him overtime," but then assigned him non-exempt duties), *aff'd*, 586 F.3d 201 (2d Cir. 2009).

## 2.     Ford Cannot Prove That WSP Recklessly Disregarded The Law.

Lacking any evidence that WSP knowingly violated the FLSA, Ford can prove willfulness only by establishing that WSP acted recklessly.  Specifically, he must show that joint employment was "*so obvious* that [WSP] must have been aware of it."  *Pinovi v. FDD Enters., Inc.*, No. 13 Civ. 2800, 2015 WL 4126872, at *4 (S.D.N.Y. July 8, 2015) (emphasis added) ("Recklessness is defined as, at the least, an extreme departure from the standards of ordinary care, to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.") (citation omitted).  Ford cannot meet this burden because joint employment is far from "so obvious."  Indeed, it is hotly disputed, as the relevant

factors show.  And, even if it were otherwise, Ford cannot show that WSP knew that QPS paid Ford in violation of the FLSA.

          a.       **Under The Relevant Factors, A Finding Of Joint Employment Is Far From Obvious.**

Under the FLSA, an "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ."  29 U.S.C. § 203(d).  An individual may have multiple employers, each of which is jointly liable for a violation of the FLSA.  *Williams*, 358 F. Supp. 3d at 304.  Deciding whether a joint employment relationship exists "should be grounded in economic reality" and based on "the totality of the circumstances."  *Barfield*, 537 F.3d at 141-42 (internal quotation marks and citations omitted).

The relevant factors include whether the alleged joint employer (i) had the power to hire and fire the employee; (ii) supervised and controlled the employee's work schedule or conditions of employment; (iii) determined the employee's rate and method of payment; and (iv) maintained the employee's employment records.  *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984).  Courts also consider factors related to "functional control," including: (1) whether the plaintiff used the purported joint employer's premises and equipment; (2) whether the subcontractor that engaged the plaintiff had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which the plaintiff performed a discrete line job that was integral to the purported joint employer's process of production; (4) whether responsibility under the contract could pass from one subcontractor to another without material changes; (5) the degree to which the purported joint employer supervised the plaintiff's work; and (6) whether the plaintiff worked exclusively or predominantly for the purported joint employer.  *See Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 71-72 (2d Cir. 2003) (citing, *inter*

*alia*, *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 724-30 (1947)).  No one factor is dispositive.  *See Barfield*, 537 F.3d at 142-43.

Many, if not most, of these factors clearly weigh against a finding of joint employment. *First*, WSP had no power to hire or fire Ford and no involvement in QPS's decisions.  Of course, WSP could decline Ford's services on its projects, but it had no right to affect his ongoing employment with QPS, which is all that matters.  *See* UF ¶ 6; *see also Martin v. Sprint United Mgmt. Co.*, 273 F. Supp. 3d 404, 424, 435 (S.D.N.Y. 2017) (this factor weighed against joint employment where Sprint and its contractor could prohibit agents from working for them but could not terminate agents' relationships with their direct employer); *Godlewska v. HDA*, 916 F. Supp. 2d 246, 258 (E.D.N.Y. 2013) (New York City agency did not have power to hire and fire contractor's home attendants even though it could direct contractor to remove attendants from patient cases); *Jean-Louis v. Metro. Cable Commc'ns, Inc.*, 838 F. Supp. 2d 111, 116, 124-25 (S.D.N.Y. 2011) (this factor favored Time Warner Cable, which had authority to "de-authorize" installation technicians but not right to keep them from working for staffing company).

*Second*, WSP did not supervise and control Ford's work schedule or conditions in a way that suggests an employment relationship.[2]  Indeed, any supervision of Ford was minimal and consistent with an independent contractor relationship.  To begin, QPS (not WSP) assigned Ford to work on the Atmos Energy projects and set Ford's schedule.  *See* UF ¶¶ 10, 15; *see also Martin*, 273 F. Supp. 3d at 425-27 (this factor did not favor joint employment where subcontractor controlled agents' schedules); *Jean-Louis*, 838 F. Supp. 2d at 126 (Time Warner did not control schedule where "Metro, not Time Warner, decides which technicians will work on

---

[2] This factor overlaps with the fifth functional control factor, which likewise assesses the degree to which WSP supervised Ford's work.  *See Zheng*, 355 F.3d at 72.

11

which job and whether a technician will work on any jobs in that period at all").  QPS also

retained the right to reassign Ford to work for other clients.  *See* UF ¶ 16.

      Further, when working at the project site, Ford monitored the subcontractors' safety

compliance with relative autonomy.  On a typical shift, he did not interact with any WSP

personnel other than the site supervisor, who generally worked at the opposite end of the

worksite so that each of them could observe the operations.  *See* UF ¶ 18.  In fact, Ford interacted

with the site supervisor as little as once per shift and then merely emailed reports to both QPS

and WSP at the end of his shift to note any safety issues that he had observed or addressed.  *Id.*

¶¶ 17, 18.  While WSP expected Ford to enforce the company's safety plan (*see* UF ¶ 12), taking

steps to ensure quality performance of this significant function is typical of a contractor

relationship, "especially . . . where the quality control's purpose is to ensure compliance with the

law or protect clients' safety."  *Godlewska*, 916 F. Supp. 2d at 259; *see also Martin*, 273 F. Supp.

3d at 426 ("Courts have widely held that exercising quality control by having strict standards and

monitoring compliance with those standards does not constitute supervising and controlling

employees' work conditions.") (internal quotation marks and citation omitted).

      *Third*, WSP did not determine Ford's rate or method of pay.  QPS alone did so.  *See* UF

¶ 20.  The fact that WSP paid QPS a set amount for HSE services is not evidence that WSP

"determined" Ford's pay.  *See Martin*, 273 F. Supp. 3d at 427-28 (Sprint did not "dictate the pay

of field workers" by determining the sum that the contractor received for each application

collected by a field agent); *Jean-Louis*, 838 F. Supp. 2d at 129-30 ("To be sure, any company A

that provides revenue to company B affects what company B pays its employees, but the test is

whether a putative joint employer determines pay rates, not whether it affects them."); *Jacobson*

*v. Comcast Corp.*, 740 F. Supp. 2d 683, 692 (D. Md. 2010) ("Plaintiffs claim Comcast has

control over their wages simply because Comcast pays the Installation Companies on a per

service basis, and the Installation Companies pay technicians on a per services basis.  To find

that this arrangement places Comcast in control of Plaintiffs' wages would dramatically expand

the FLSA to subsume traditional independent contractor relationships.").

*Fourth*, WSP did not maintain employment records for Ford.  QPS was responsible for

maintaining all records of hours worked by and amounts paid to Ford.  *See* UF ¶ 24.  QPS did

not share Ford's pay records with WSP.  *See* UF ¶ 21; *see also Godlewska*, 916 F. Supp. 2d at

262 ("The employment records 'most relevant' to FLSA payment obligations are those

concerning 'hours worked.'") (quoting *Barfield*, 537 F.3d at 144); *Martin*, 273 F. Supp. 3d at 429

("Where maintaining employment records is primarily a contractor's responsibility, and a

putative joint employer's review of certain records is only an extension of the putative joint

employer's quality control procedures, the fourth formal control factor is not satisfied.") (internal

quotation marks and citation omitted).[3]

*Fifth*, Ford did not perform his work on WSP's premises and generally did not use WSP's

equipment.  *See Zheng*, 355 F.3d at 72.  Rather, Ford's work took place at a site owned or leased

by Atmos Energy.  *See* UF ¶ 13; *see also Martin*, 273 F. Supp. 3d at 429-30, 438 (this factor

favored defendants where field agents never worked at premises of Sprint or contractor);

*Godlewska*, 916 F. Supp. 2d at 262 (this factor favored defendants where plaintiffs worked in

patients' homes); *Jean-Louis*, 838 F. Supp. 2d at 131-32 (this factor favored Time Warner where

technicians visited company's premises once per year).  Further, while Ford's work did not

require much equipment, the most important equipment—his computer and personal protective

---

[3] Ford testified that he submitted "invoices" to WSP that showed the amounts that QPS
paid him, but the "tickets" that supported QPS's invoices actually showed only QPS's daily
billing rates and per diem payments for Ford's services.  *See* UF ¶ 19.

equipment—was provided by QPS (the former) or Ford himself (the latter).  *See* UF ¶ 14 (QPS also rented to WSP gas monitors that were kept on site).  The fact that WSP did not provide Ford with the equipment most essential to his work further undermines his claim.  *See Martin*, 273 F. Supp. 3d at 430 (this factor weighed against employment where Sprint provided "limited pieces of equipment," but "field agents never visited Sprint facilities, never used Sprint-provided transportation, and received their tablets from [the contractor and subcontractor]"); *Jean-Louis*, 838 F. Supp. 2d at 132 ("[T]he fact that Time Warner provides that lone piece of equipment is overwhelmingly outweighed by what Time Warner does not provide and the fact that Metro technicians visit Time Warner facilities only once per year.").

*Sixth*, QPS could shift its business as a unit from one putative joint employer to another. *See Zheng*, 355 F.3d at 72.  Nothing in the MSA restricted QPS from providing its services to customers other than WSP.  *See* UF ¶ 7.  That fact, too, weighs against joint employment.  *See Martin*, 273 F. Supp. 3d at 430 ("Plaintiffs dispute that [the subcontractor] actually provided similar services to other companies or individuals, . . . but the test here turns on [the subcontractor's] capability—whether it '*could* shift as a unit from one putative joint employer to another.'") (emphasis in original) (quoting *Jean-Louis*, 838 F. Supp. 2d at 132).  In fact, QPS did service other customers, as Ford acknowledged at deposition.  *See* UF ¶ 7 (testifying that QPS provided workers to a project in Houston for a client other than WSP).

*Seventh*, Ford did not perform a discrete "line job" that was integral to a process of production.  *See Zheng*, 355 F.3d at 72.  In fact, he did not perform a "line job" at all, as he was responsible for monitoring the construction work to ensure proper safety.  *See* UF 12.  Therefore, this factor weighs against joint employment as well.  *See Martin*, 273 F. Supp. 3d at 431 (though field agents' work was "obviously important, and arguably integral, to this aspect of Sprint's

14

business . . . [t]he marketing and outreach services that the field agents provide[d] for Sprint [were] ultimately just that, services") (citation omitted); *Hugee v. SJC Grp., Inc.*, No. 13-cv-0423 (GBD), 2013 WL 4399226, at *9 (S.D.N.Y. Aug. 14, 2013) ("As a security guard, Plaintiff was a service provider and did not perform a discrete line job.") (citation omitted).

*Eighth*, responsibility for Ford's services could not seamlessly pass from one vendor to another. *See Zheng*, 355 F.3d at 72. "[T]his factor weighs in favor of a determination of joint employment when employees are tied to an entity . . . rather than to an ostensible direct employer[.]" *Id.* at 74. "On the other hand, where 'employees work for an entity (the purported joint employer) only to the extent that their direct employer is hired by that entity, this factor does not in any way support the determination that a joint employment relationship exists.'" *Martin*, 273 F. Supp. 3d at 432 (quoting *Zheng*, 355 F.3d at 72). Thus, the critical question is "whether, if the putative joint employer hired one contractor rather than another, 'the *same* employees would continue to do the *same* work in the *same* place.'" *Jean-Louis*, 838 F. Supp. 2d at 135 (quoting *Zheng*, 355 F.3d at 74) (emphasis in original). Ford has no evidence that, if WSP had hired a company other than QPS, he still would have worked on the Atmos Energy projects. In fact, Ford does not claim that he ever worked for any of the other companies that supplied HSE professionals to WSP. Nor can he dispute that WSP engaged QPS to provide the HSE professionals for these projects only after a competitive bidding process. Absent any evidence that Ford could simply move from QPS to another HSE provider while continuing to work on the Atmos Energy projects, this factor, too, weighs against joint employment. *See Jean-Louis*, 838 F. Supp. 2d at 135 (this factor weighed against joint employment given lack of

evidence that installation technicians would continue to install Time Warner cable even if Time Warner severed its relationship with the technicians' employer).

*Ninth*, Ford at least arguably did not work for WSP "exclusively or predominantly." *See Zheng*, 355 F.3d at 72.  On the contrary, his work for WSP was limited to defined projects for a single client, and those projects were expected to last just a few months.  *See* UF ¶ 10.  Even if Ford had remained employed by QPS, he may never have worked on another WSP project.  Given his short and temporary tenure, Ford hardly worked "exclusively or predominantly" for WSP.  In any event, "working primarily or solely for one client is not a proxy for joint employment because it is 'perfectly consistent with a legitimate subcontracting relationship.'"  *In re. Domino's Pizza*, No. 16-cv-2492 (AJN), 2018 WL 4757944, at *9 (S.D.N.Y. Sept. 30, 2018) (quoting *Zheng*, 355 F.3d at 72); *see also Jean-Louis*, 838 F. Supp. 2d at 136 ("[I]t seems strange to conclude that Time Warner controls Metro technicians because Metro contracts only with Time Warner where it is undisputed that Time Warner does not control whether Metro does so."); *Godlewska*, 916 F. Supp. 2d at 265 (finding no functional control even though plaintiff spent several years working for New York City agency); *Martin*, 273 F. Supp. 3d at 433-34, 438-39 (neither Sprint nor contractor was a joint employer even though plaintiffs worked exclusively for them); *Monzano-Moreno v. Libqual Fence Co., Inc.*, No. 18-cv-0161 (MKB), 2021 WL 730663, at *17 (E.D.N.Y. Feb. 5, 2021) (defendants were not joint employers despite plaintiffs' exclusive work for them).

Given all the factors that at least arguably weigh against joint employment, Ford could not possibly prove, as he must, that his alleged employment status was so clear that WSP acted in reckless disregard of the law by treating him as it did.  Indeed, in a number of the cases cited above—including *Martin*, *Godlewska*, *Jean-Louis*, and *Jacobson*—the courts considered similar

16

facts and rejected joint employment claims altogether. *See Martin*, 273 F. Supp. 3d at 438-39 (contractor was not a joint employer despite field agents' exclusive work for it and use of its equipment and fact disputes as to whether it controlled field agents' rate and methods of payment and whether agents would continue to work for it if it severed its relationship with their direct employer); *Godlewska*, 916 F. Supp. 2d at 265 (defendant was not a joint employer even though plaintiffs satisfied three *Zheng* factors: "[T]he Court need not decide that *every* factor weighs against joint employment.") (emphasis in original) (quoting *Zheng*, 355 F.3d at 76-77); *Jean-Louis*, 838 F. Supp. 2d at 137-38 ("[E]ven taking into account the factors [indicating control]," the totality of the circumstances required a finding of no joint employment); *Jacobson*, 740 F. Supp. 2d at 689-94 (Comcast not a joint employer even though installation technicians worked "primarily, if not exclusively" for it, and Comcast maintained "personnel and performance based records"); *see also Moreau v. Air France*, 356 F.3d 942, 953 (9th Cir. 2004) ("[C]onsidering the entire relationship in its totality . . . , we conclude that Air France should not be treated as a joint employer of the ground handling service company employees.").

The Court need not go so far here. Rather, it must conclude only that the joint employment question is sufficiently in doubt to preclude a finding that WSP did not act in "deliberate disregard" of a known legal requirement. *Williams*, 358 F. Supp. at 303. It clearly is. *E.g.*, *Rosario*, 2018 WL 4636822, at *8, *10 (rejecting willfulness claim on summary judgment even though underlying claim for alleged employment status survived).

### b.      Ford Also Cannot Prove That WSP Willfully Underpaid Him.

Regardless of whether Ford ultimately can establish a joint employment relationship, he cannot prove that WSP willfully denied him overtime pay. A violation of the FLSA is not "willful" unless it is "voluntary," "deliberate," or "intentional." *See Richland Shoe*, 486 U.S. at 128. Yet Ford has no evidence that WSP *intentionally* or *deliberately* denied him overtime pay.

17

Indeed, he has no evidence that WSP participated in setting Ford's compensation at all or even was privy to QPS's pay practices.  Thus, the MSA obligated QPS to "observe and abide by all applicable laws, regulations, ordinances and other rules of Federal, State, and municipal governments" and to perform its work "in compliance with all applicable laws, rules, and regulations."  *See* UF ¶ 5.  QPS further agreed to indemnify WSP in the event that WSP incurred losses as a result of QPS's unlawful conduct.  *Id.*  As a result of QPS's various contractual obligations to ensure compliance, WSP had no knowledge of how QPS paid Ford.  *See id.* ¶ 21.

Ford may argue that it was unreasonable or negligent for WSP not to ascertain QPS's pay practices, but that argument ignores the standard for a willful violation.  *Richland Shoe,* 486 U.S. at 133 (FLSA's "willful violation" provision "refer[s] to conduct that is not merely negligent"); *Parada*, 753 F.3d at 71 ("If an employer acts unreasonably, but not recklessly, in determining its legal obligation, its action should not be considered willful.").

In short, because Ford has no evidence that WSP directed QPS to pay him in a manner that violated the FLSA, he cannot prove a willful violation, regardless of the strength of his joint employment claim.  WSP is entitled to summary judgment for this reason as well.

## V.    CONCLUSION

For the foregoing reasons, WSP respectfully requests that the Court grant its motion for summary judgment as to Ford's claim that it willfully violated the FLSA and hold that a two-year statute of limitations applies to his claim and the claim of any other individual who may opt in to this lawsuit as a party plaintiff.

Dated: March 26, 2021                    Respectfully submitted,

AKIN GUMP STRAUSS HAUER & FELD LLP

  s/ *Gregory W. Knopp*
Gregory W. Knopp
New York Bar No. 2892909
1999 Avenue of the Stars, Suite 600
Los Angeles, CA 90067
Telephone:    310.229.1000
Facsimile:     310.229.1001
gknopp@akingump.com

Nathan J. Oleson (*pro hac vice*)
Joshua K. Sekoski (*pro hac vice*)
Zara H. Shore (*pro hac vice*)
2006 K Street, NW
Washington, DC 20006
Telephone:    202.887.4000
Facsimile:     202.887.4288
noleson@akingump.com
jsekoski@akingump.com
zshore@akingump.com

*Counsel for Defendant WSP USA Inc.*

19