**FITAPELLI & SCHAFFER, LLP**
Joseph A. Fitapelli
Dana Cimera
28 Liberty St. 30th Floor
New York, NY 10005
Telephone: (212) 300-0375

**JOSEPHSON DUNLAP, LLP**
Michael A. Josephson (Admitted *Pro Hac Vice*)
Richard M. Schreiber(Admitted *Pro Hac Vice*)
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Telephone: (713) 352-1100

**BRUCKNER BURCH, PLLC**
Richard J. (Rex) Burch (Admitted *Pro Hac Vice*)
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Telephone: (713) 877-8788

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HAROLD FORD, Individually and for Others Similarly Situated,<br><br>v.<br><br>WSP USA, INC. | Case No. 1:19-cv-11705-LGS<br><br>Jury Trial Demanded |

## <u>MEMORANDUM OF LAW<br>IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY CERTIFICATION<br>PURSUANT TO THE FAIR LABOR STANDARDS ACT, FOR COURT-AUTHORIZED<br>NOTICE TO SIMILARLY SITUATED PERSONS.</u>

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Anglada v. Linens 'N Things, Inc.*,
2007 WL 1552511 (S.D.N.Y. May 29, 2007) ..................................................13

*Benavides v. Serenity Spa NY Inc.*,
166 F. Supp. 3d 474 (S.D.N.Y. 2016) ..........................................................15

*Bergman v. Kindred Healthcare, Inc.*,
949 F. Supp. 2d 852 (N.D. Ill. 2013) ...........................................................17

*Boykin v. Anadarko Petroleum Corp.*,
2018 WL 1406878 (D. Colo. Mar. 21, 2018) ................................................10

*Brown v. AvalonBay Communities, Inc.*,
2019 WL 1507901 (E.D.N.Y. Mar. 29, 2019) ...............................................12

*Cabrera v. Stephens*, 16 Civ. 3234 (ADS)(SIL),
2017 WL 4326511 (E.D.N.Y. Sept. 28, 2017) ..............................................13

*Chhab v. Darden Restaurants, Inc.*,
2013 WL 5308004 (S.D.N.Y. Sept. 20, 2013) .................................................8

*Colozzi v. St. Joseph's Hosp. Health Ctr.*,
595 F. Supp. 2d 200 (N.D.N.Y.2009) ............................................................8

*Deloitte & Touche*,
2011 WL 6292923 ......................................................................................14

*Fasanelli v. Heartland Brewery, Inc.*,
516 F.Supp.2d 317 (S.D.N.Y.2007) ..............................................................14

*Ferreira v. Modell's Sporting Goods, Inc.*,
2012 WL 2952922 (S.D.N.Y. July 16, 2012) ..................................................9

*Gambino v. Harvard Prot. Servs. LLC*,
2011 WL 102691 (S.D.N.Y. Jan. 11, 2011) ..................................................13

*Ganci v. MBF Inspection Servs., Inc.*,
323 F.R.D. 249 (S.D. Ohio 2017) ................................................................10

*Garcia Ramos v. DNC Food Serv. Corp.*,
2020 WL 2832776 (S.D.N.Y. June 1, 2020) ..................................................15

*Glatt v. Fox Searchlight Pictures Inc.*,
2013 WL 4834428 (S.D.N.Y. Aug. 26, 2013) ...........................................16, 17

*Grant v. Warner Music Grp. Corp.*,
2014 WL 1918602 (S.D.N.Y. May 13, 2014) ..................................................8

*Halle v. Galliano Marine Serv., LLC*,
2018 WL 1757343 (E.D. La. Apr. 12, 2018) ................................................10

*Hamadou v. Hess Corp.*,
915 F. Supp.2d 651 (S.D.N.Y. 2013) ...........................................................13

*Hancock v. Lario Oil & Gas Co.*,
2019 WL 3494263 (D. Kan. Aug. 1, 2019) ....................................................9

*Hoffmann-La Roche Inc. v. Sperling*,
493 U.S. 165 (1989) ................................................................................7, 12

*Iglesias-Mendoza v. La Belle Farm, Inc.*,
239 F.R.D. 363 (S.D.N.Y. 2007) .................................................................13

*In re Deloitte & Touche, LLP Overtime Litig.*, 11 Civ. 2461 (RMB)(THK),
2012 WL 340114 (S.D.N.Y. Jan. 17, 2012) ..................................................................13

*In re Penthouse Executive Club Compensation Litigation*,
2010 WL 4340255 (S.D.N.Y. Oct. 27, 2010) ................................................................14

*Islam v. LX Ave. Bagels, Inc.*,
2019 WL 5198667 (S.D.N.Y. Sept. 30, 2019) ..............................................................12

*Jackson v. Bloomberg, L.P.*,
298 F.R.D. 152 (S.D.N.Y. 2014) ....................................................................................16

*Kemper v. Westbury Operating Corp.*,
2012 WL 4976122 (E.D.N.Y. Oct. 17, 2012) ..........................................................16, 17

*Klimchak v. Cardrona, Inc.*,
2011 WL 1120463 (E.D.N.Y. Mar. 24, 2011) ................................................................7

*Kolasa v. BOS Sols., Inc.*,
2018 WL 3370675 (W.D. Pa. May 10, 2018) ..................................................................9

*Kuebel v. Black & Decker Inc.*,
643 F.3d 352 (2d Cir. 2011) ............................................................................................7

*Lee v. ABC Carpet & Home*,
236 F.R.D. 193 (S.D.N.Y. 2006) ....................................................................................11

*Lijun Geng v. Shu Han Ju Rest. II Corp.*,
2019 WL 4493429 (S.D.N.Y. Sept. 9, 2019) ................................................................12

*Lockwood v. CIS Servs., LLC*,
2017 WL 6335955 (M.D. Fla. Sept. 26, 2017) ..............................................................10

*Man Fan v. Ping's on Mott, Inc.*,
2014 WL 1512034 (S.D.N.Y. Apr. 14, 2014) ............................................................7, 15

*Martin v. Sprint/United Management Company*,
2016 WL 30334 (S.D.N.Y. Jan. 4, 2016) ......................................................................13

*McGlone v. Contract Callers, Inc.*,
867 F. Supp. 2d 438 (S.D.N.Y. 2012) ....................................................................8, 16, 17

*Miranda v. General Auto Body Works, Inc.*,
2017 WL 4712218 (E.D.N.Y. Oct. 18, 2017) ........................................................8, 13, 14

*Morris v. Lettire Const. Corp.*,
896 F. Supp. 2d 265 (S.D.N.Y. 2012) ............................................................................15

*Myers v. Hertz Corp.*,
624 F.3d 537 (2nd Cir. 2010) ..............................................................................7, 8, 12

*O'Quinn v. TransCanada USA Servs., Inc.*,
2020 WL 3497491 (S.D.W. Va. June 29, 2020) ..............................................................9

*Portilla v. Bridgehampton Stone, Inc.*,
2019 WL 1128364 (E.D.N.Y. Mar. 12, 2019) ..............................................................12

*Raniere v. Citigroup Inc.*,
827 F. Supp. 2d 294 (S.D.N.Y. 2011) ............................................................................14

*Romero v. Clean Harbors Surface Rentals USA, Inc.*,
368 F. Supp. 3d 152 (D. Mass. 2019) ..............................................................................9

*Schaefer v. M & T Bank Corp.*,
122 F.Supp.3d 189 (S.D.N.Y. 2015) ................................................................................8

*Serebryakov v. Golden Touch Transportation of NY, Inc.*,
181 F. Supp. 3d 169 (E.D.N.Y. 2016) ................................................................8, 9, 11, 14

*Small v. University Medical Center of Southern Nevada*,
2013 WL 3043454 (D. Nev. June 14, 2013) ..................................................................17

*Sobczak v. AWL Indus., Inc.,*
  540 F.Supp.2d 354 (E.D.N.Y.2007) .................................................................................. 9

*Stallings v. Antero Res. Corp.,*
  2018 WL 1250610 (D. Colo. Mar. 12, 2018) ................................................................. 10

*Taylor v. R.J.T. Motorist Serv., Inc.,*
  2020 WL 4937483 (S.D.N.Y. Aug. 24, 2020) ............................................................... 13

*Tutien v. Esteemed Patrol Inc.,*
  2013 WL 8115441 (E.D.N.Y. June 10, 2013) ........................................................... 7, 11

*Varghese v. JP Morgan Chase & Co.,*
  2016 WL 4718413 (S.D.N.Y. Sept. 9, 2016) ................................................................ 16

*Whitlow v. Crescent Consulting, LLC,*
  322 F.R.D. 417 (W.D. Okla. 2017) ................................................................................ 10

*Yahraes v. Rest. Associates Events Corp.,*
  2011 WL 844963 (E.D.N.Y. March 8, 2011) ................................................................ 16

*Zhongle Chen v. Kicho Corp.,*
  2020 WL 1900582 (S.D.N.Y. Apr. 17, 2020) ............................................................... 15

## Statutes

29 U.S.C. § 207(a) ................................................................................................................. 6

29 U.S.C. § 216(b) ............................................................................................................ 2, 7

29 U.S.C. § 255(a) ............................................................................................................... 13

## Rules

Fed. R. Civ. P. 23 .................................................................................................................. 7

## PRELIMINARY STATEMENT

WSP USA, Inc. (WSP) provides technical expertise and strategic advice to clients in the Transportation & Infrastructure, Property & Buildings, Environment, Industry, Resources (including Mining and Oil & Gas) and Energy sectors, as well as offering project and program delivery and advisory services. To provide services to many of its customers, WSP retains safety workers like Ford. WSP obtained these safety workers by contracting with staffing companies for their services at a set rate. In the past three years, WSP employed 163 HSE Day Rate Workers, obtained from six staffing companies, on approximately 20 to 40 projects throughout Texas, Louisiana, Mississippi, Alabama, and Virginia. Ford worked for WSP providing health and safety services in Athens, Texas. WSP unlawfully and improperly classified its Health, Safety, and Environmental (EHS) workers, like Ford, as independent contractors and paid them a daily rate with no overtime compensation for hours regularly worked in excess of 40 hours per workweek in violation of the FLSA.

Through this motion, Ford seeks to protect the rights of himself and the rights of HSE workers, employed by, or working on behalf of, WSP USA, Inc. who were classified as independent contractors and paid a day-rate with no overtime at any time during the past 3 years (the "HSE Day Rate Workers") by sending them Court-approved notice of this action and allow potential opt-ins to join this action and attempt to recover their unpaid wages. Through Ford's Complaint, declaration, invoices, and deposition testimony, Ford exceeds his low burden on this motion and demonstrates that WSP subjected all HSE Day Rate Workers to the same unlawful policies.

## BACKGROUND

## I.     PROCEDURAL HISTORY

Plaintiff Harold Ford filed the class and collective complaint on December 20, 2019.  *See* **Exhibit A,** Plaintiff's Original Complaint. WSP filed its answer on March 2, 2020.  *See* ECF No. 14.  The parties attended a settlement conference with the court on January 28, 2021, which was unsuccessful.  Now, Ford moves for conditional certification under 29 U.S.C. § 216(b).

## II.  FACTUAL BACKGROUND

### A.  Defendant

WSP provides technical expertise and strategic advice to clients in the Transportation & Infrastructure, Property & Buildings, Environment, Industry, Resources (including Mining and Oil & Gas) and Energy sectors, as well as offering project and program delivery and advisory services.  *See* **Doc. 1**, ¶ 27.  WSP provides its services to customers like Atmos *See* **Exhibit A**, Deposition of Harold Ford, 32:7 – 25. WSP employs approximately 163 Day Rate Workers who were denied overtime wages as a result of WSP' common violations of the FLSA.  **Exhibit B**, Deposition of Patricia Brush 7:20-8:5; 15:20 – 16:3.

### B.  Plaintiff

Ford worked for WSP as a HSE specialist who received a flat day rate for each day he worked. **Exhibit A**, 10:17 – 11:16; 81:14 – 20. Ford worked for WSP on the Atmos Project in Texas. *Id.* 33:2 – 17.  Ford was paid a day rate ranging from $400 to $420 per day. *Id.* 81:14 – 20. Throughout the duration of his employment with WSP, Ford worked over 40 hours each week and was not paid any additional overtime premiums for any hour he worked over 40. *Id.* 84:8 – 11. Ford would usually work 16 and 17 hours a day. *Id.* Instead getting proper overtime, Ford was paid a day rate. **Exhibit C**, Ford and former Opt-in Plaintiff Necaise's Invoices.

For example, for the week covering March 11, 2019 through March 17, 2019, Mr. Ford worked 12 hour shifts every day that week and received a total of $2,800.00 in gross wages, which equates to a day rate of $400 a day for all 7 days. **Exhibit C**.

| Date | Day | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 3/11/2019 | Monday | 6:00:00 PM | 6:00:00 AM | | | 400.00 | ATMOS | 192078H003 (2.24) | WSP | AT23003 |
| 3/12/2019 | Tuesday | 6:00:00 PM | 6:00:00 AM | | | 400.00 | ATMOS | 1920T8H003 (2.24) | WSP | AT23003 |
| 3/13/2019 | Wednesday | 6:00:00 PM | 6:00:00 AM | | | 400.00 | ATMOS | 192078H003 (2.24) | WSP | AT23003 |
| 3/14/2019 | Thursday | 6:00:00 PM | 6:00:00 AM | | | 400.00 | ATMOS | 192078H003 (2.24) | WSP | AT23003 |
| 3/15/2019 | Friday | 6:00:00 PM | 6:00:00 AM | | | 400.00 | ATMOS | 192078H003 (2.24 | WSP | AT23003 |
| 3/16/2019 | Saturday | 8:00:00 PM | 6:00:00 AM | | | 400.00 | ATMOS | 192078H003 (2.24) | WSP | AT23003 |
| 3/17/2019 | Sunday | 6:00:00 PM | 6:00:00 AM | | | 400.00 | ATMOS | 192078H003 (2.24) | WSP | AT23003 |
| | | | | | | | | Total Hours | | |
| | | | | | | | | Weekly Total | $   2,800.00 | |

Despite the fact that he worked 44 hours of overtime during this week, Ford did not receive any additional overtime premiums.

WSP applied this scheme to other HSE Day Rate Workers. In that regard, Ford worked alongside other employees who worked over 40 hours. **Exhibit A**, 10:17 – 22;  **Exhibit B**, 7:20-8:5; 15:20 – 16:3; **Exhibit C**; **Exhibit D**, QPS Payroll Records. In the last three years WSP approximately 163 HSE workers. **Exhibit B**, 7:20-8:5; 15:20 – 16:3.

Perry Dobbs, an HSE supervisor with WSP, was aware that Ford was paid a day rate. **Exhibit E**, Deposition of Perry Dobbs, 15:19 – 16:2; 17:8 – 11.

```
 8      Q.  Right.  So you were aware that Mr. Necaise and
 9   Mr. Ford were getting paid a day rate, correct?
10          MR. OLESON:  Object to form.
11      A.  Yes.
```

Considering records exist to demonstrate this unlawful policy, it is evident that WSP is not only aware Day Rate Workers are working over 40 hours in a work week, but willfully disregarding the FLSA.

### C.     <u>Ford and the Putative Class Members are Similarly Situated</u>

In the instant case, Ford and the Putative Class Members are similarly situated because they all: (1) received a flat day rate for each day worked, regardless of the hours worked; (2) were all required or permitted to work overtime without receiving compensation at the legal rate of pay; (3) were all staffed to work for WPS; (4) were all HSE employees of WPS that it mischaracterized as independent contractors; (5) were never guaranteed a salary; and (6) were only paid for each day actually worked.

Significantly, WSP time sheets provide evidence of a WSP policy that robs HSE Day Rate Workers of significant overtime premiums that they are entitled to under the law. *See* **Exhibit C**; **Exhibit D**. In addition, the records reflect that others received a flat daily rate as well. *Id.* Furthermore, by WSP's own account, all staffing companies that WSP uses follow the same process for invoicing WSP for each day a Day Rate Worker performs work on behalf of WSP. **Exhibit B**, 14:10-15:7. WSP has also testified that there were 163 HSE Day Rate Workers. *Id.* 7:20-8:5; 15:20 – 16:3. All these HSE workers provide services to drilling new wells and underground storage projects. *Id.*, 10:10 – 20.

```
17        Q. So it's safe to say that the majority of these
18   projects is dealing with underground storage like you
19   said, correct?
20        A. This is correct.
```

These HSE Day Rate Workers provided the same services regardless of which staffing company or project. *Id.*, 17:17 – 18:1. All HSE Day Rate Workers for WSP had to follow the Project Safety Plan. *Id.*, 16:4 – 15; 21:2 – 12. This was developed by WSP. *Id.* Any deviation of the PSP had to be approved by WSP. 20:4 – 7.

```
4        Q.  What is a PSP?
5        A.  Project safety plan.
6        Q.  And does every project that -- that WSP has an
7   HSE personnel or contractor on have a project safety
8   plan?
9        A.  Yes.
10       Q.  Who develops those project safety plans?
11       A.  The project manager.
12       Q.  Is the project manager a WSP employee?
13       A.  Yes, he is or she is.
14       Q.  Do you assist in developing that PSP?
15       A.  I review and approve.
```

This was regardless of staffing company. Id., 22:3 – 11. Further, all HSE Day Rate Workers had to fill out WSP roster forms. *Id.*, 26:24 – 27:15. Additionally, all WSP Master Service Agreements contain an outline for contractor safety. *Id.*, 35:9 – 36:3. All WSP's HSE Day Rate Workers are in charge of safety reports, field notes, sign-in/out forms, at-risk observations, maintain safe work/hot work permits, receives a power point presentation regarding procedures, comply with WSP's Job Safety Analysis, and ensure personal protective equipment is worn by all workers regardless of staffing company or project. *Id.*, 40:13 - 41:18; 43:8 – 25; 44:22 – 45:16; 55:1 – 57:8.

Regardless of project, these HSE workers are required to enforce WSP safety requirements. *Id.*, 44:14 – 18.

```
14       Q.  And regardless of project, the HSE
15   representative is required to enforce OSHA requirements
16   as well as WSP's safety requirement, correct?
17            MR. OLESON:  Object to form.
18       A.  Yes.
```

Further, the HSE Day Rate Workers' job duties were all the same.

5

```
 8       A.  He was contracted by WSP to work that site.
 9       Q.  (BY MR. SCHREIBER)  And his job was to note and
10   keep the job site safe, correct?
11       A.  Yes.  Make observations and keep the job site
12   safe.
13       Q.  And that was -- that's the job of all WSP's,
14   you know, HSE's workers, correct?
15       A.  That's the job of any HSE.
16       Q.  And WSP is no different, correct?
17           MR. OLESON:  Object to form.
18       A.  WSP is no different.
19           THE REPORTER:  What was the answer?
20   You-all kind of talked over each other.
21       Q.  (BY MR. SCHREIBER)  You said WSP is no
22   different?
23       A.  Correct.
```

**Exhibit E**, 31:8 – 23.

In this lawsuit, Ford more than meets the lenient standard of showing that notice to the Putative Class Members is appropriate. The deposition testimonies and invoices/timesheets attached to this Motion confirm the nature of WSP's policy of its HSE Day Rate Workers being paid a flat daily rate per day for all hours worked.

## III.    NATURE OF THE CLAIMS.

### A.    <u>WSP Failed to Pay Ford and Other Day Rate Workers Overtime Compensation</u>

WSP systematically failed to pay Ford and all other HSE Day Rate Workers overtime pay at one and a half times their regular rate of pay for all hours worked over forty in a work week. Under the FLSA, an employer must pay its employees an overtime premium of one and a half times their regular rate of pay when they work over forty hours in a single week. 29 U.S.C. § 207(a). "To establish liability under the FLSA on a claim for unpaid overtime, a Ford must prove that [he or she] performed work for which [he or she] was not properly compensated, and that the employer had actual or constructive knowledge of that work." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361 (2d Cir. 2011). As discussed, *supra*, WSP, through its staffing companies, systematically applied this day rate compensation practice to its HSE Day Rate Workers.

**ARGUMENT**

I. **CONDITIONAL CERTIFICATION OF THE FLSA COLLECTIVE IS APPROPRIATE BECAUSE THE CLASS IS "SIMILARLY SITUATED."**

The FLSA authorizes aggrieved employees to bring a collective action "on behalf of themselves and other employees similarly situated." 29 U.S.C. § 216(b). Unlike a class action pursuant to Fed. R. Civ. P. 23, an employee in a collective action brought under FLSA § 216(b) is not a class member until he or she affirmatively opts-in to the collective action. 29 U.S.C. § 216(b). Thus, until similarly situated employees file consents to opt-in to this action, the statute of limitations continues to run against them on a daily basis. Therefore, it is critical that similarly situated employees are afforded notice and an opportunity to opt-in as soon as possible, before their claims are reduced or extinguished by the passage of time.

A. **The Two-Step Certification Process For FLSA Collective Actions**

Courts in this Circuit use a two-step method to assess whether to certify a collective action. *See Tutien v. Esteemed Patrol Inc.*, No. 12 Civ. 1847 (KAM)(RER), 2013 WL 8115441, at *1 (E.D.N.Y. June 10, 2013)(Reyes, J.); *see also Man Fan v. Ping's on Mott, Inc.*, No. 13 Civ. 4939 (AT), 2014 WL 1512034, at *1 (S.D.N.Y. Apr. 14, 2014) (*citing Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989)).

First, the court determines whether a collective action should be conditionally certified for the purposes of sending judicial notice and conducting discovery. *Myers v. Hertz Corp.*, 624 F.3d 537, 554-55 (2nd Cir. 2010). During this stage, "the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations"; the only inquiry is whether the proposed class members would be "similarly situated." *Klimchak v. Cardrona, Inc.*, No. CV-09-04311 SJF ARL, 2011 WL 1120463, at *5 (E.D.N.Y. Mar. 24, 2011); *Colozzi v. St. Joseph's Hosp. Health Ctr.*, 595 F. Supp. 2d 200, 205 (N.D.N.Y.2009) (stating that "[a] plaintiff's burden at this preliminary stage is minimal" and "the court does not weigh the merits, resolve factual disputes, or make credibility determinations"). In other words, the merits of the claims are not to be considered or addressed at this stage. "Generally, the court examines 'whether putative plaintiffs are similarly situated at an early

'notice stage' and then again after discovery is largely complete.'" *Miranda v. General Auto Body Works, Inc.*, No. 17 Civ. 04116 (AMD)(RER), 2017 WL 4712218, at *1 (E.D.N.Y. Oct. 18, 2017)(Reyes, J.)(quoting *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 442 (S.D.N.Y. 2012); *see also Chhab v. Darden Restaurants, Inc.*, No. 11 Civ. 8345 (NRB), 2013 WL 5308004, at *9 (S.D.N.Y. Sept. 20, 2013). As such, plaintiffs need only "make a modest factual showing that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law." *Miranda*, 2017 WL 4712218, at * 1 (quoting *Myers*, 624 F.3d at 554). The factual showing for conditional certification is a "lenient one" *Miranda*, 2017 WL 4712218, at * 1 (citing *McGlone*, 867 F. Supp. 2d at 443). This minimal burden can be satisfied by "the pleadings, affidavits, and affidavits of potential members of the collective action." *Serebryakov v. Golden Touch Transportation of NY, Inc.*, 181 F. Supp. 3d 169, 173 (E.D.N.Y. 2016)(Reyes, J.)(quoting *Grant v. Warner Music Grp. Corp.*, No. 13 Civ 4449, 2014 WL 1918602, at *3 (S.D.N.Y. May 13, 2014).

"[T]he Second Circuit has emphasized that the standard of proof should remain "low" because "the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist.'" *See Chhab*, 13 WL 5308004, at *10. (*citing Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010)); *Schaefer v. M & T Bank Corp.*, 122 F.Supp.3d 189, 193 (S.D.N.Y. 2015) (stating that the "[p]laintiff's burden is minimal because the determination that the parties are similarly situated is merely a preliminary one"). Reaching this burden "does not require proof of an actual FLSA violation," but only requires a "factual nexus between the plaintiff's situation and the situation of other potential plaintiffs." *Serebryakov*, 181 F. Supp. 3d at 173 (quoting *Sobczak v. AWL Indus., Inc.*, 540 F.Supp.2d 354, 362 (E.D.N.Y.2007)). Rather, if the court finds that similarly situated potential plaintiffs exist, "the Court should conditionally certify the class, order that appropriate notice be given to putative class members, and the action should continue as a 'collective action throughout the discovery process.'" *Ferreira v. Modell's Sporting Goods, Inc.*, No. 11 Civ. 2395 (DAB), 2012 WL 2952922, at *2 (S.D.N.Y. July 16, 2012).

**B.**     **Courts Regularly Certify Collective Actions Challenging Day Rate Practices.**

A uniform pay practice justifies conditional certification, particularly a scheme that is recognized as evading the FLSA's requirements. And courts around the country grant conditional certification in cases where defendants paid workers (directly or through staffing companies) according to a common pay practice such as a day rate pay plan. *See, e.g.*, Sziber v. Dominion Energy, Inc., No. 3:20-CV-00117; Doc. No. 43 (E.D. Va. Dec. 20, 2020) (conditionally certifying a nationwide class of inspectors paid a day rate) (**Exhibit F**); *O'Quinn v. TransCanada USA Servs., Inc.*, No. 2:19-CV-00844, 2020 WL 3497491, at *6 (S.D.W. Va. June 29, 2020) (conditionally certifying nationwide class of inspectors paid a day rate); *Hancock v. Lario Oil & Gas Co.*, No. 2:19-cv-02140-JAR-KGG, 2019 WL 3494263, at *2 (D. Kan. Aug. 1, 2019) (certifying a class of day rate company men who were employed by various staffing companies); *Romero v. Clean Harbors Surface Rentals USA, Inc.*, 368 F. Supp. 3d 152 (D. Mass. 2019) (conditionally certifying case in which plaintiff alleged that he and other oil & gas workers were paid a day rate with no overtime in violation of FLSA, where the defendant contracts with third-party staffing companies to supply workers for certain projects); *Kolasa v. BOS Sols., Inc.*, CV 17-1087, 2018 WL 3370675, at *7 (W.D. Pa. May 10, 2018), adopted, 2018 WL 3361269 (W.D. Pa. July 10, 2018) (despite argument by defendant named plaintiffs each only worked for one of the five staffing vendors, and that vendors treated their technicians differently, the court found evidence they were all subject to the same day rate policy and granted class of all current and former solids control technicians); *Boykin v. Anadarko Petroleum Corp.*, No. 17-CV-02309-MSK-STV, 2018 WL 1406878, at *1 (D. Colo. Mar. 21, 2018) (conditionally certifying class of rig welders hired through third party service companies who were misclassified as independent contractors and paid straight time for overtime); *Stallings v. Antero Res. Corp.*, No. 1:17-CV-01939-RM-NYW, 2018 WL 1250610 (D. Colo. Mar. 12, 2018), *adopted,* No. 17-CV-01939-RM-NYW, 2018 WL 2561046 (D. Colo. Apr. 16, 2018) (conditionally certifying case in which plaintiff alleged that he and other Solids Control Operators and Pipeline Inspectors were paid a day rate with no overtime in violation of FLSA); *Halle v. Galliano Marine Serv., LLC*, No. CV 15-5648, 2018 WL 1757343 (E.D. La. Apr. 12, 2018) (conditionally certifying case in which plaintiff alleged that he and other ROV workers were paid a day rate with no

overtime in violation of FLSA); *Ganci v. MBF Inspection Servs., Inc.*, 323 F.R.D. 249 (S.D. Ohio 2017) (certifying class action under Ohio state overtime law in case in which plaintiff alleged that he and other oilfield inspectors were paid a day rate with no overtime); *Whitlow v. Crescent Consulting, LLC*, 322 F.R.D. 417 (W.D. Okla. 2017) (conditionally certifying case in which plaintiff alleged that he and other drilling consultants were paid a day rate with no overtime in violation of FLSA); *Lockwood v. CIS Servs., LLC*, No. 3:16-CV-965-J-39PDB, 2017 WL 6335955 (M.D. Fla. Sept. 26, 2017) (conditionally certifying case in which plaintiff alleged that she and other adjusters were paid a day rate with no overtime in violation of FLSA).

C. <u>Ford Has Made The Required Showing That Day Rate Workers At WSP Are Similarly Situated.</u>

1. **Ford demonstrates a common policy and practice of Day Rate Workers being denied overtime compensation.**

Ford has made a strong preliminary showing, through his well-pleaded Complaint, documents in his possession, his deposition testimony, and the deposition testimony of Patricia Bush and Perry Dobbs that WSP subjected Ford and all other HSE Day Rate Workers to the same compensation policies, and that these policies violated the FLSA. Through his complaint, his deposition testimony, and the deposition testimonies of Patricia Brush and Perry Dobbs, Ford has shown enough to demonstrate a reasonable inference that he and other HSE Day Rate Workers were not paid for their overtime hours. This is more than sufficient evidence to demonstrate that WSP's denial of overtime time pay to HSE Day Rate Workers was a common policy and practice. *See Serebryakov*, 181 F. Supp. 3d at 174-175 (certifying a 216(b) collective based off of plaintiffs' declarations that they had worked over 40 hours in a week).

Here, Ford is similarly situated to the Putative Class Members because they were all subject to a common, illegal compensation plan. Specifically, Ford and the HSE Day Rate Workers are similarly situated because they all performed safety work on WSP sites; WSP misclassified them as independent contractors; and they were paid a daily rate for all hours worked, regardless of which project they worked on of which staffing company they were working for WSP through. *See* **Exhibit B**, 14:10-

15:7; 40:13 - 41:18; 43:8 – 25; 44:22 – 45:16; 55:1 – 57:8; **Exhibit C**; **Exhibit D**. Instead of being paid a guaranteed salary, Ford and the HSE Day Rate Workers were paid a day rate regardless of the number of hours worked over 40 in a workweek. They were not paid overtime (at time and a half) for all hours worked over 40 in a week which violates the FLSA. *See Hughes*, at 191 (6th Cir. 2017). This is more than sufficient evidence to demonstrate that WSP's denial of overtime time pay to HSE Day Rate Workers was a common policy and practice. *See Serebryakov*, 181 F. Supp. 3d at 174-175 (certifying a 216(b) collective based off of plaintiffs' declarations that they had worked over 40 hours in a week).

In a case with comparable facts and claims, *Lee v. ABC Carpet & Home*, the court certified a 216(b) collective where a single plaintiff alleged "a common policy or plan of the [d]efendants' failure to pay overtime wages, misclassification as independent contractors rather than employees, and alleged a factual nexus between his circumstances and the circumstances of a number of … individuals who were in the same position as the[p]laintiff." *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 198 (S.D.N.Y. 2006); *see also Tutien*, 2013 WL 8115441, at *3. (granting single plaintiffs motion for certification because he more than established a modest factual nexus). Accordingly, the Court should find that Ford is similarly situated to WSP's HSE Day Rate Workers.

## II.  COURT-AUTHORIZED NOTICE IS APPROPRIATE IN THIS CASE.

In addition to an order conditionally certifying this collective action, Ford respectfully requests the Court authorized notice be sent by mail, email, and text message to all HSE Day Rate Workers who work or have worked at WPS from December 20, 2016 to the present, and set the notice period at 60 days. While the FLSA does not expressly require courts to authorize the sending of notice to potential opt-in plaintiffs, the Second Circuit recently recognized that district courts "have discretion, in appropriate cases, to implement [§ 216(b)] . . . by facilitating notice to potential plaintiffs" of the pendency of the action and of their opportunity to opt-in as represented plaintiffs. *Myers*, 624 F.3d at 554 (citing *Hoffman-LaRoche*, 493 U.S. at 169).

These methods of distribution are routinely approved by this Court and other courts, and should be approved here.  "Although email has some potential drawbacks in providing notice, its benefits have led courts to employ notice by email, along with other means, as a standard practice."

*Islam v. LX Ave. Bagels, Inc.*, No. 18-CIV-04895-RA-RWL, 2019 WL 5198667, at *11 (S.D.N.Y. Sept. 30, 2019) (finding email "well serves the goal of making 'as many potential plaintiffs as possible aware of this action … in without devolving into a fishing expedition or imposing undue burdens on the defendant'"). Similarly, courts recognize notice by text message furthers the purpose of notice of a collective action under the FLSA. *Portilla v. Bridgehampton Stone, Inc.*, No. CV-17-2549-JMA-AYS, 2019 WL 1128364, at *10 (E.D.N.Y. Mar. 12, 2019); *see Lijun Geng v. Shu Han Ju Rest. II Corp.*, No. 18CV12220PAERWL, 2019 WL 4493429, at *20 (S.D.N.Y. Sept. 9, 2019) (finding notice by mail, email, and text are ordinarily approved). Reminder notices are also appropriate. "The weight of caselaw in the Second Circuit has in recent years moved towards approval of reminder notices in light of the remedial purpose of the FLSA." *Brown v. AvalonBay Communities, Inc.*, No. CV 17-6897 (AKT), 2019 WL 1507901, at *13 (E.D.N.Y. Mar. 29, 2019) (collecting cases); *see Taylor v. R.J.T. Motorist Serv., Inc.*, No. 19-CV-01155 (PMH), 2020 WL 4937483, at *6 (S.D.N.Y. Aug. 24, 2020). Finally, the notice should be posted at WSP's project locations where HSE professional work. "Courts routinely approve requests to post notice of conditional certification on employee bulletin boards and in other common areas even where potential members will also be notified by mail." *Hamadou v. Hess Corp.*, 915 F. Supp.2d 651, 669 (S.D.N.Y. 2013). *See also, e.g., Miranda*, 2017 WL 4712218 , at *3 (permitting mailing and posting of notice); *In re Deloitte & Touche, LLP Overtime Litig.*, 11 Civ. 2461 (RMB)(THK), 2012 WL 340114, at *2 (S.D.N.Y. Jan. 17, 2012) (allowing notice by email since "communication through email is the norm"); *Gambino v. Harvard Prot. Servs. LLC*, No. 10 CIV 0983 PAC, 2011 WL 102691, at *2 (S.D.N.Y. Jan. 11, 2011) ("Defendant is directed to produce, in a computer readable format, the names and last known mailing addresses, and alternate addresses, telephone numbers, last known email addresses, and dates of employment . . . ."). Further, we submit that text message notice is appropriate here because the nature of WSP' business facilitated a high turnover rate. *See Cabrera v. Stephens*, 16 Civ. 3234 (ADS)(SIL), 2017 WL 4326511 (E.D.N.Y. Sept. 28, 2017) (permitting text and email notice); *see also Martin v. Sprint/United Management Company*, No. 15 Civ. 5237 (PAE), 2016 WL 30334, at *19 (S.D.N.Y. Jan. 4, 2016).

Attached as **Exhibit G** is Ford's proposed Judicial Notice and Consent Forms. Ford

respectfully requests that these forms of notice be adopted.

## III.  A THREE-YEAR NOTICE PERIOD IS APPROPRIATE.

The FLSA expressly permits a three-year statute of limitations to remedy willful violations of the Act. *See* 29 U.S.C. § 255(a). This Court routinely approves a three-year notice period. S*ee, e.g., Iglesias-Mendoza v. La Belle Farm, Inc.,* 239 F.R.D. 363, 369 (S.D.N.Y. 2007) ("Where wilfulness [sic] is disputed, the court applies the three-year statute of limitations for purposes of certifying a representative action."); *Anglada v. Linens 'N Things, Inc.,* 2007 WL 1552511, at *8 (S.D.N.Y. May 29, 2007) ("[W]here there has been no substantive discovery as to the appropriate temporal scope of the prospective class of member plaintiffs, and where the Plaintiff has alleged a willful violation of the FLSA, it is prudent to certify a broader class of plaintiffs that can be limited subsequently, if appropriate, during the second phase of the collective action certification process."); *Fasanelli v. Heartland Brewery, Inc.,* 516 F.Supp.2d 317, 323 (S.D.N.Y.2007) (conditionally certifying class based on three-year period to "avoid any merit-based determinations at this time" but noting the possibility of "decertification at a later time"). Accordingly, a three-year notice period is appropriate.

## IV.  EXPEDITED DISCLOSURE OF NAMES AND CONTACT INFORMATION

In order to provide potential opt-in plaintiffs with notice of the pendency of this lawsuit, Ford requires discovery of the names and contact information for those individuals. "As has been noted by a number of courts in this circuit, courts often grant this kind of request in connection with a conditional certification of an FLSA collective action." *Raniere v. Citigroup Inc.*, 827 F. Supp. 2d 294, 327 (S.D.N.Y. 2011) (listing cases); *In re Penthouse Executive Club Compensation Litigation*, No. 10 Civ. 1145(NRB), 2010 WL 4340255, at *5 (S.D.N.Y. Oct. 27, 2010) (listing cases). Indeed, "[i]t is now commonplace in this Circuit to require the provision of personal contact information to class counsel for the purposes of notifying a class of a collective action and enabling class counsel to obtain relevant discovery." *Deloitte & Touche*, 2011 WL 6292923, at *1.

Accordingly, Ford respectfully requests that the Court direct WSP to produce a computer-readable list of the names, last known addresses, social security numbers, telephone numbers, e-mail addresses, work locations, and dates of employment for all persons employed by WSP as HSE Day

Rate Workers as defined *supra. See, e.g., Miranda*, 2017 WL 4712218, at *3 (requiring defendants to produce names, last known addresses, alternative addresses, known telephone numbers, known e-mail addresses, and dates of employment); *Serebryakov,* 181 F. Supp. 3d at 177 (ordering discovery of all names, last known addresses, alternate addresses, telephone numbers, e-mail addresses, dates and locations of employment, positions held, dates of birth and social security numbers); *Kim Man Fan*, 2014 WL 1512034 (requiring production of names, addresses, telephone numbers, and e-mail addresses); *Benavides v. Serenity Spa NY Inc.*, 166 F. Supp. 3d 474, 488 (S.D.N.Y. 2016) ("[c]ourts in this District commonly grant requests for the production of names, mailing addresses, email addresses, telephone numbers, and dates of employment in connection with the conditional certification of a FLSA collective action."); *see also, Zhongle Chen v. Kicho Corp.*, No. 18-CV-7413-PMH-LMS, 2020 WL 1900582, at *16 (S.D.N.Y. Apr. 17, 2020) (directing defendant "to provide Plaintiff's counsel with the names, addresses, telephone numbers, social media handles, and dates of employment for all potential plaintiffs"); *Garcia Ramos v. DNC Food Serv. Corp.*, No. 19-CV-2967 (VSB), 2020 WL 2832776, at *11 (S.D.N.Y. June 1, 2020) (ordering defendants "to produce in electronic form all the names, last known addresses, e-mail addresses, and telephone numbers, including cell phone numbers, of employees in the conditionally certified collective"). This information is necessary to facilitate notice to the HSE Day Rate Workers.

## V.    REMINDER NOTICE

Additionally, Ford requests that his Court permit reminder notice by the same methods. Notifying potential plaintiffs that their right to join this lawsuit is limited, the reminder notice promotes the FLSA's broad remedial purpose, as well as the goal of court-authorized notice, by fostering efficient case management through notification and joinder of claims. "Given that notice under the FLSA is intended to inform as many potential plaintiffs as possible of the collective action and their right to opt-in, we find that a reminder notice [to alert potential plaintiffs that the deadline is coming due] is appropriate." *See Morris v. Lettire Const. Corp.,* 896 F. Supp. 2d 265, 275 (S.D.N.Y. 2012).

## VI. EQUITABLE TOLLING

Should the Court grant the instant motion, Ford respectfully requests that, to avoid inequitable circumstances, the statute of limitations be tolled until such time that they are able to send notice to potential opt-in plaintiffs. District courts in this circuit and others have increasingly granted requests for equitable tolling to avoid the prejudice to actual or potential opt-in plaintiffs that can arise from the unique procedural posture of such cases. *See, e.g., Varghese v. JP Morgan Chase & Co.*, No. 14 CIV. 1718 (PGG), 2016 WL 4718413, at *11 (S.D.N.Y. Sept. 9, 2016) (granting plaintiffs' motion for equitable tolling); *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 170-71 (S.D.N.Y. 2014) (tolling the statute of limitations as of the date of the filing of the plaintiff's motion); *Glatt v. Fox Searchlight Pictures Inc.*, No. 11 Civ. 6784 (WHP), 2013 WL 4834428, at *2 (S.D.N.Y. Aug. 26, 2013) (tolling statute of limitations as of the date the plaintiff was originally scheduled to file her motion for conditional certification); *Kemper v. Westbury Operating Corp.*, No. 12 Civ. 895 (ADS)(ETB), 2012 WL 4976122, at *3 (E.D.N.Y. Oct. 17, 2012) ("[P]laintiffs' request to notify individuals who were employed three years from the date plaintiff filed this motion, rather than from the date of the mailing of the notice, is granted."); *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012) (tolling statute of limitations while conditional certification motion was being decided).

Here, the parties face unique circumstances that would warrant equitable tolling. WSP was originally notified of potential claims against them in December 2019. In the time that has passed since, the parties engaged in discovery and participated in a settlement conferences with the Court on two separate occasions. The initial scheduling conference was delayed to know fault of the Court or the Parties. The delay caused by this process warrants equitable tolling. Moreover, courts have acknowledged that "the delay caused by the time required for a court to rule on a motion, such as one for certification of a collective action in a FLSA case, may be deemed an 'extraordinary circumstance' justifying application of the equitable tolling doctrine." *Yahraes v. Rest. Associates Events Corp.*, No. 10 Civ. 935 (SLT), 2011 WL 844963, at *2 (E.D.N.Y. March 8, 2011); *see, e.g., Jackson*, 298 F.R.D. at 171; *Glatt*, 2013 WL 4834428, at *2; *Kemper*, 2012 WL 4976122, at *3; *McGlone*, 867 F.Supp.2d at 445; *Small*

*v. University Medical Center of Southern Nevada*, No. 2:13 Civ. 298 (APG)(PAL), 2013 WL 3043454, at *3 (D. Nev. June 14, 2013); *Bergman v. Kindred Healthcare, Inc.*, 949 F. Supp. 2d 852, 861 (N.D. Ill. 2013).

<u>**CONCLUSION**</u>

For the reasons stated herein, Ford respectfully requests that the Court: (1) conditionally certify this action as a collective action pursuant to Section 216(b) of the FLSA; (2) order WSP to provide the names, last known addresses, telephone numbers, e-mail addresses, work locations, and dates of employment of all putative class members; and (3) equitably toll the statute of limitations for potential opt-in plaintiffs.

Dated: New York, New York
March 26, 2021

Respectfully submitted,

*/s/ Michael A. Josephson*
**Michael A. Josephson**
Texas State Bar No. 24014780
**Andrew Dunlap**
Texas State Bar No. 24078444
**Richard M. Schreiber**
Texas State Bar No. 24056278
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
rschreiber@mybackwages.com

**AND**

**Richard J. (Rex) Burch**
Texas State Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

Dana M. Cimera
**FITAPELLI & SCHAFFER, LLP**
Joseph A. Fitapelli
Dana M. Cimera
28 Liberty Street, 30th Floor
New York, NY 10005
Telephone: (212) 300-0375

**ATTORNEYS IN CHARGE FOR PLAINTIFF**

CERTIFICATE OF SERVICE

Plaintiff served this document on all Parties via ECF on March 26, 2021.

/s/ Michael A. Josephson
Michael A. Josephson

CERTIFICATE OF CONFERENCE

Plaintiff conferred with Defendant and participated in two settlement conferences. Defendant is opposed to the relief requested.

/s/ Michael A. Josephson
Michael A. Josephson