UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HAROLD FORD,<br><br>    Plaintiff,<br><br>    -against-<br><br>WSP USA INC.,<br><br>    Defendant. | 19 Civ. 11705 (LGS) |

**MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S MOTION FOR PRELIMINARY CERTIFICATION**

AKIN GUMP STRAUSS HAUER & FELD LLP

Gregory W. Knopp
New York Bar No. 2892909
1999 Avenue of the Stars, Suite 600
Los Angeles, CA 90067
Telephone:    310.229.1000
Facsimile:    310.229.1001
gknopp@akingump.com

Nathan J. Oleson (*pro hac vice*)
Joshua K. Sekoski (*pro hac vice*)
Zara H. Shore (*pro hac vice*)
2006 K Street, NW
Washington, DC 20006
Telephone:    202.887.4000
Facsimile:    202.887.4288
noleson@akingump.com
jsekoski@akingump.com
zshore@akingump.com

*Counsel for Defendant WSP USA Inc.*

# TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT.........................................................................................1

II.     BACKGROUND ............................................................................................................2

III.    ARGUMENT ..................................................................................................................5

       A.     Ford Has Not Satisfied His Burden To Justify Conditional Certification Of
            A Broad Collective Action. ........................................................................................5

            1.     Ford Must Prove That The Workers At Issue Are Similarly
                  Situated. ........................................................................................................5

            2.     Ford Has Not Satisfied His Burden. ............................................................8

       B.     The Court Should Apply A Two-Year Statute Of Limitations. ..............................14

       C.     The Court Should Modify Ford's Proposed Notice Procedures and Forms. .........17

            1.     Text Messages, Reminder Notices, and Live Calls Are Excessive............17

            2.     Ford's Forms Are Misleading And Incomplete. ........................................19

IV.     CONCLUSION..............................................................................................................20

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aguilo v. Vails Gate Cleaners, Inc.*,
  2020 WL 3545558 (S.D.N.Y. June 30, 2020) ........................................................19

*Andon v. SDG Properties, Inc.*,
  2018 WL 3970910 (S.D.N.Y. Aug. 20, 2018) ........................................................20

*Anglada v. Linens 'N Things, Inc.*,
  No. 06 Civ. 12901(CM)(LMS), 2007 WL 1552511 (S.D.N.Y. May 29, 2007) .....................15

*Blake v. Hewlett-Packard Co.*,
  No. 4:11-CV-592, 2013 WL 3753965 (S.D. Tex. July 11, 2013) ...........................................7

*Boykin v. Anadarko Petroleum Corp.*,
  No. 18-CV-02309-MSK-STV, 2018 WL 1406878 (D. Colo. Mar. 21, 2018) ........................10

*Brand v. Comcast Corp.*,
  No. 12-CV-1122, 2012 WL 4482124 (N. D. Ill. Sept. 26, 2012) ...........................................18

*Brown v. Barnes & Noble, Inc.*,
  No. 1:16-CV-07333 (RA) (KHP), 2018 WL 3105068 (S.D.N.Y. June 25,
  2018) ........................................................................................................................6

*Callari v. Blackman Plumbing Supply, Inc.*,
  988 F. Supp. 2d 261 (E.D.N.Y. 2013) ...................................................................14

*Contrera v. Langer*,
  278 F. Supp. 3d 702 (S.D.N.Y. 2017)...............................................................8, 10

*Delijanin v. Wolfgang's Steakhouse, Inc.*,
  No. 18-CV-07854-LJL-KHP, 2019 WL 1760154 (S.D.N.Y. Apr. 22, 2019) ........................16

*Fasanelli v. Heartland Brewery, Inc.*,
  516 F. Supp. 2d 317 (S.D.N.Y. 2007)...................................................................15

*Freeman v. MedStar Health Inc.*,
  187 F. Supp. 3d 19 (D.D.C. 2016) ........................................................................15

*Ganci v. MBF Inspection Servs., Inc.*,
  323 F.R.D. 249 (S.D. Ohio 2017) ........................................................................14

*Guaman v. 5 "M" Corp.*,
  No. 13-CV-03820 (LGS), 2013 WL 5745905 (S.D.N.Y. Oct. 23, 2013)...............................10

*Guzelgurgenli v. Prime Time Specials, Inc.*,
  883 F. Supp. 2d 340 (E.D.N.Y. 2012) ...................................................................17

*Halle v. Galliano Marine Serv., LLC*,
  No. 15-CV-5648, 2018 WL 1757343 (E.D. La. Apr. 12, 2018) ...............................14

*Hancock v. Lario Oil & Gas Co.*,
  No. 2:19-CV-02140-JAR-KGG, 2019 WL 3494263 (D. Kan. Aug. 1, 2019) ........................14

*Hernandez v. Immortal Rise, Inc.*,
  No. 11-CV-4360(RRM)(LB), 2012 WL 4369746 (E.D.N.Y. Sept. 24, 2012) ......................17

*Hoffman-La Roche Inc. v. Sperling*,
  493 U.S. 165 (1989) ...........................................................................19

*Iglesias-Mendoza v. La Belle Farm, Inc.*,
  239 F.R.D. 363 (S.D.N.Y. 2007) ...............................................................15

*Jibowu v. Target Corp.*,
  No. 17-CV-3875 (PKC) (CLP), 2020 WL 5820957 (E.D.N.Y. Sept. 30, 2020) ....................10

*Kim Man Fan v. Ping's on Mott, Inc.*,
  No. 13 Civ. 4939 (AT), 2014 WL 1512034 (S.D.N.Y. Apr. 14, 2014) ...........................6

*Klimchak v. Cardrona, Inc.*,
  No. CV-08-04311 SJF ARL, 2011 WL 1120463 (E.D.N.Y. Mar. 24, 2011) ........................6

*Knispel v. Chrysler Group LLC*,
  No. 11-CV-11886, 2012 WL 553722 (E.D. Mich. Feb. 21, 2012) ..............................17

*Knox v. John Varvatos Enters. Inc.*,
  282 F. Supp. 3d 644 (S.D.N.Y. 2017) ..........................................................15

*Kolasa v. BOS Sols., Inc.*,
  No. 17-CV-1087, 2018 WL 3370675 (W.D. Pa. May 10, 2018) ...................................13

*Korenblum v. Citigroup, Inc.*,
  195 F. Supp. 3d 475 (S.D.N.Y. 2106) ...................................................7, 8, 9, 12

*Lee v. ABC Carpet & Home*,
  236 F.R.D. 193 (S.D.N.Y. 2006) ...............................................................13

*Ling Chen v. Asian Terrace Restaurant, Inc.*,
  2020 WL 4041133 (E.D.N.Y. July 17, 2020) ....................................................17

*Lockwood v. CIS Servs., LLC*,
  No. 3:16-CV-965-J-39PDB, 2017 WL 6335955 (M.D. Fla. Sept. 26, 2017) .....................14

*Mark v. Gawker Media LLC*,
    No. 13-CV-4347 (AJN), 2014 WL 5557489 (S.D.N.Y. Nov. 3, 2014)................................16

*Martin v. Sprint/United Mgmt. Co.*,
    No. 15 Civ. 5237 (PAE), 2016 WL 30334 (S.D.N.Y. Jan. 4, 2016)...................................9, 10

*McDermott v. Fed. Sav. Bank*,
    No. 14-CV-6657 (JMA) (GRB), 2018 WL 1865916 (E.D.N.Y. Apr. 18, 2018)....................6

*Moses v. Griffin Industries, LLC*,
    No. 18-CV-1200 (ALC) (OTW), 2020 WL 5813737 (S.D.N.Y. Sept. 30,
    2020) ............................................................................................................................15

*Myers v. Hertz Corp.*,
    624 F.3d 537 (2d Cir. 2010)...................................................................................5, 6, 12

*O'Quinn v. TransCanada USA Servs., Inc.*,
    469 F. Supp. 3d 591 (S.D. W. Va. 2020)...................................................................13

*Pace v. DiGuglielmo*,
    544 U.S. 408 (2005)..............................................................................................15, 16

*Phillips v. Generations Family Health Ctr.*,
    723 F.3d 144 (2d Cir. 2013)....................................................................................15

*Robinson v. Ryla Teleservices, Inc.*,
    No. 11-CV-131, 2011 WL 6667338 (S.D. Ala. Dec. 21, 2011) ................................18

*Romero v. Clean Harbors Surface Rentals USA, Inc.*,
    368 F. Supp. 3d 152 (D. Mass. 2019) .....................................................................13

*Sanchez v. JMP Ventures, LLC*,
    No. 13 Civ. 7264(KBF), 2014 WL 465542 (S.D.N.Y. Jan. 27, 2014) ......................6

*Schmidt v. Charleston Collision Holdings Corp.*,
    No. 2:14-CV-01094-PMD, 2015 WL 3767436 (D.S.C. June 17, 2015) ...................18

*Serebryakov v. Golden Touch Transportation of NY, Inc.*,
    181 F. Supp. 3d 169 (E.D.N.Y. 2016) ....................................................................13

*Smallwood v. Illinois Bell Tel. Co.*,
    710 F. Supp. 2d 746 (N.D. Ill. 2010) .....................................................................18

*Snead v. EOG Resources, Inc.*,
    No. 5:16-CV-1134-OLG, 2017 WL 6294875 (W.D. Tex. Feb. 14, 2017) ................18

*Stallings v. Antero Res. Corp.*,
    No. 1:17-CV-01939-RM-NYW, 2018 WL 1250610 (D. Colo. Mar. 12, 2018)........10

*Taylor v. R.J.T. Motorist Service, Inc.*,
  No. 19-CV-01155 (PMH), 2020 WL 4937483 (S.D.N.Y. Aug. 24, 2020) ............................19

*Thaxton v. Bojangles' Restaurants, Inc.*,
  No. 1:17-CV-269, 2018 WL 11240502 (E.D. Tenn. Oct. 31, 2018) .......................................17

*Torres v. Gristede's Operating Corp.*,
  No. 04 Civ. 3316 (PAC), 2006 WL 2819730 (S.D.N.Y. Sept. 29, 2006)..................................7

*Tutein v. Esteemed Patrol Inc.*,
  No. 12-CV-1847 (KAM)(RER), 2013 WL 8115441 (E.D.N.Y. June 10, 2013)....................12

*Whitlow v. Crescent Consulting, LLC*,
  322 F.R.D. 417 (W.D. Okla. 2017).........................................................................................13

*Wu v. Sushi Nomado of Manhattan, Inc.*,
  No. 17-CV-04661 (PGG) (DF), 2019 WL 3759126 (S.D.N.Y. July 25, 2019)......................16

*Zheng v. Good Fortune Supermarket Grp. (USA), Inc.*,
  No. 13 CV 60, 2013 WL 5132023 (E.D.N.Y. Sept. 12, 2013)................................................10

**Statutes**

29 U.S.C. § 216(b) .......................................................................................................................5

**Other Authorities**

29 C.F.R. § 778.112 ...................................................................................................................12

Pursuant to the Court's March 11, 2021 order (Dkt. No. 71), Defendant WSP USA Inc. submits this memorandum of law in opposition to plaintiff Harold Ford's motion for preliminary certification of a collective action under the Fair Labor Standards Act ("FLSA") (Dkt. No. 81).

## I.    PRELIMINARY STATEMENT

In 2019, Harold Ford worked as a Health, Safety, and Environmental ("HSE") professional for Quality Project Solutions ("QPS"), which provides safety personnel to its clients. QPS assigned him to a construction project for one of those clients, WSP, and paid him at least $400 per day. Ford claims that, under the FLSA, he is entitled to additional pay for overtime hours. He further claims that WSP is liable for the alleged violation because, along with QPS, it was his "joint employer."

Ford now moves for conditional certification of a collective action that includes *all* HSE professionals who provided services to WSP—not just those employed by QPS—and who were "paid a day-rate with no overtime." *See* Mot. at 1. However, he has not made the evidentiary showing necessary to justify notice to this broad collective. The law requires Ford to demonstrate that the individuals at issue were subject to the same pay practice that he claims violated the FLSA. Yet, despite having already completed discovery, Ford has presented no evidence that HSE professionals working for HSE companies other than QPS were paid in a similar manner. Lacking any evidence of a common pay practice among these different vendors, Ford has not proven, as he must, that all of their workers are similarly situated.

At this advanced stage of the litigation, this deficiency is fatal to Ford's motion as to HSE professionals working for other companies. In a putative collective action, the plaintiff typically moves for conditional certification early in the suit, arguing, as Ford inexplicably does here, that notice "as soon as possible" is necessary before the claims of potential plaintiffs "are reduced or

1

extinguished by the passage of time."  *See* Mot. at 7.  At an early stage, in assessing whether potential opt-in plaintiffs are similarly situated, courts apply a lenient standard that can be satisfied even by a mere declaration from the plaintiff.  But courts demand more where, as here, the plaintiff elects to undergo discovery rather than seek conditional certification "as soon as possible."  With the benefit of a fulsome evidentiary record, the Court can more closely scrutinize Ford's showing that a common pay practice exists.  With discovery now closed, Ford has utterly failed this test.  As a result, any conditional certification order must be limited to the QPS workers.

More specifically, the Court should limit notice to QPS workers who worked on WSP projects within the past two years.  Although Ford asks the Court to apply a three-year statute of limitations and makes an open-ended request for equitable tolling, he cannot justify either request.  As WSP's motion for partial summary judgment demonstrates, Ford cannot prove a willful violation of the FLSA, which is necessary to extend the limitations period beyond two years.  Additionally, Ford's motion falls well short of establishing the sorts of extraordinary circumstances that can justify equitable tolling.

Finally, the Court should modify Ford's proposed notice and related procedures.  As explained in detail below, the proposed notice process is excessive and intrusive, and the draft notice is misleading and incomplete.

## II.    BACKGROUND

WSP is an engineering firm.  *See* Dkt. No. 79 (Def.'s Rule 56.1 Statement) ¶ 1.  Among other services, WSP assists oil and gas industry clients by designing and managing the construction or refurbishment of underground storage facilities for liquid and gaseous hydrocarbons.  *Id.*  With respect to the construction and refurbishment projects, WSP serves as a

general contractor, coordinating various subcontractors that perform different aspects of the work.  *Id.* ¶ 2.

WSP provides HSE support to ensure that the contractors perform their work safely.  *Id.* ¶ 3.  For some projects, WSP engages another company to provide HSE professionals, either because WSP is required to do so (by a client or by law) or because a subcontractor does not satisfy the project's HSE standards.  *Id.*

One of these companies, QPS, employed Ford.  QPS "provides project staffing, consulting, recruiting, and technical services to all aspects of the oil and gas, petrochemical, construction, manufacturing, energy, and renewable resource industries."  Dkt. No. 79 ¶ 4.  In September 2018, WSP and QPS entered into a Master Service Agreement ("MSA"), whereby QPS would provide HSE personnel "as needed."  *Id.* ¶ 5.  The MSA specifies that QPS performs its work "as an independent contractor and not as [WSP's] agent or employee."  *Id.*

Pursuant to the agreement, QPS provided HSE professionals, including Ford, to WSP for a group of projects for Atmos Energy Corporation, a natural gas distributor.  *Id.* ¶ 10.  Ford is a highly trained and experienced HSE professional, having worked in this capacity for more than a dozen companies over the course of 20 years, usually as an independent contractor.  *Id.* ¶ 8.  QPS hired Ford in March 2019.  *Id.* ¶ 9.  QPS then trained Ford at its expense.  *Id.* ¶ 11.  Following the training, QPS assigned Ford to the Atmos Energy projects.  *Id.* ¶ 10.  At the time, QPS had other customers, and Ford was free to work for those customers when not working on the Atmos Energy projects.  *Id.* ¶ 16.  QPS also had the authority to remove Ford from the Atmos Energy project and assign him to other jobs.  *Id.*

Once on the Atmos Energy projects, Ford was one of several HSE professionals responsible for ensuring that the contractors complied with applicable safety regulations and the

project's safety plan.  *Id.* ¶ 12.  Specifically, Ford supported HSE activities at the site by attending safety meetings, monitoring the site for safety compliance, and submitting to QPS and WSP a report at the end of each shift documenting what he had observed.  *Id.* ¶ 17.  Ford used a computer provided by QPS and personal protective equipment that he provided himself.  *Id.* ¶ 14.

QPS was responsible for paying Ford's wages.  *Id.* ¶ 20.  It paid him a fixed amount per day, at least $400, regardless of the hours worked.  *Id*.  QPS alone determined how, and how much, to pay Ford throughout his work on the Atmos Energy projects.  *Id*.  In fact, WSP was not aware of QPS's pay practices until after Ford filed this lawsuit.  *Id.* ¶ 21.

In May 2019, two months after hiring Ford, QPS fired him following a dispute about mileage reimbursement.  *Id.* ¶ 25.  QPS made the decision to terminate Ford's employment.  *Id.* WSP was not involved in that decision.  *Id*.

On December 20, 2019, Ford filed this suit against WSP (but not QPS), claiming that WSP jointly employed him with QPS and is liable for QPS's alleged failure to pay overtime wages as required by the FLSA.  *See* Dkt. No. 1 ("Complaint") ¶¶ 31-33.  Ford seeks to represent all HSE professionals provided by any company.  *See* Mot. at 1.  Yet, at deposition, Ford was surprised to learn that he was claiming to represent anyone but himself.  *See* Declaration of Joshua K. Sekoski filed in support of this memorandum ("Sekoski Decl.") ¶ 4, Ex. B ("Ford Dep.") 29:7-14 ("Q. Do you understand that in this lawsuit you're asserting your claims on behalf of a group of people?  A. Well, now that you tell me that, yeah.  Q. Well, before I told you that, you didn't know?  A. Well, I don't – I didn't realize that I'm representing a whole crowd of people, no.").

Moreover, Ford concedes that he knows nothing about the other HSE companies, let alone their pay practices.  *See* Ford Dep. 37:16-21 ("Q. Are you aware of any other companies

besides QPS that have provided HSE to WSP?  A. No, I'm not.").  Although fact discovery

concluded in September 2020 (*see* Dkt. No. 36 at 2-3), Ford has obtained no discovery from

these other companies.  *See* Sekoski Decl. ¶ 2.

## III.   ARGUMENT

Ford has failed to demonstrate, as he must, that the workers provided by companies other

than QPS are similarly situated to him.  Indeed, he has presented no evidence whatsoever that

those individuals were subject to the pay practice that he challenges.  The absence of any such

evidence, especially at this advanced stage of the lawsuit, precludes conditional certification of a

broad collective action and cannot justify sending notice of the suit to anyone other than QPS's

workers.  Moreover, even as to this subgroup, the Court should limit the notice to QPS workers

who worked on WSP projects within the past two years, because Ford can prove neither that

WSP willfully violated the FLSA nor that any tolling of the statute of limitations is appropriate.

### A.   Ford Has Not Satisfied His Burden To Justify Conditional Certification Of A Broad Collective Action.

#### 1.   Ford Must Prove That The Workers At Issue Are Similarly Situated.

The FLSA permits a plaintiff to sue on behalf of "other employees similarly situated."

29 U.S.C. § 216(b).  To participate in the action, the similarly situated employees must

affirmatively opt in to the case by filing written consent.  *Id.*  Courts may implement this process

"'by facilitating notice to potential plaintiffs' of the pendency of the action and of their

opportunity to opt-in as represented plaintiffs."  *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir.

2010) (quoting *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989)).  The plaintiff

bears the burden of establishing the propriety of sending notice to members of the putative

collective.  *See id.* at 554-55 (citing *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y.

1997)); *Sanchez v. JMP Ventures, LLC*, No. 13 Civ. 7264(KBF), 2014 WL 465542, at *1 (S.D.N.Y. Jan. 27, 2014).

In the Second Circuit, courts generally administer collective actions through a two-step process. *Myers*, 624 F.3d at 554-55.  The first step customarily "occurs at the beginning of discovery."  *Klimchak v. Cardrona, Inc.*, No. CV-08-04311 SJF ARL, 2011 WL 1120463, at *4 (E.D.N.Y. Mar. 24, 2011) (quoting *Gorey v. Manheim Servs. Corp.*, No. 7:10-cv-1132, 2010 WL 5866258, at *3 (S.D.N.Y. Nov. 10, 2010)).  It "involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred."  *Myers*, 624 F.3d at 555 (citations omitted).  Early in a case, courts generally require a "modest factual showing" that others are so situated.  *See id.*; *see also Kim Man Fan v. Ping's on Mott, Inc.*, No. 13 Civ. 4939 (AT), 2014 WL 1512034, at *2 (S.D.N.Y. Apr. 14, 2014) (because discovery had not yet started, plaintiff's "conclusory" affidavits were sufficient).  This lenient standard applies at the start of a case because fulsome discovery has not yet occurred, and the defendant will later have the chance to challenge certification at the second step "on a fuller record."  *Myers*, 624 F.3d at 555.  Although this standard is "modest," it is not a rubber stamp; it "cannot be satisfied simply by unsupported assertions."  *Id.* (internal quotation marks and citation omitted).

When substantial discovery already has occurred, courts apply a more demanding "modest plus" standard, meaning that they require corroborating evidence that supports the plaintiff's factual assertions and consider evidence undermining those assertions.  *See Brown v. Barnes & Noble, Inc.,* No. 1:16-cv-07333 (RA) (KHP), 2018 WL 3105068, at *6-7 (S.D.N.Y. June 25, 2018) (applying "modest plus" standard "based on discovery conducted"); *McDermott v. Fed. Sav. Bank*, No. 14-cv-6657 (JMA) (GRB), 2018 WL 1865916, at *5 (E.D.N.Y. Apr. 18,

2018) ("[T]he Court is not required to turn a blind eye to evidence in the record that is relevant to the conditional certification determination."); *Korenblum v. Citigroup, Inc.*, 195 F. Supp. 3d 475, 482 (S.D.N.Y. 2106) ("The 'lenient' or 'modest' standard discussed in *Myers* did not set forth an inflexible burden of proof that is incapable of being increased in proportion to the discovery conducted by the parties. . . . Given the discretionary, managerial nature of the inquiry, not to mention the inherent imprecision of words like 'modest' and 'lenient,' a Court's initial review may properly grow more exacting as discovery proceeds."); *Torres v. Gristede's Operating Corp.,* No. 04 Civ. 3316 (PAC), 2006 WL 2819730, at *9-10 (S.D.N.Y. Sept. 29, 2006) (applying heightened scrutiny following close of discovery); *Blake v. Hewlett-Packard Co.*, No. 4:11-CV-592, 2013 WL 3753965, at *5 (S.D. Tex. July 11, 2013) (following two-step process but also "imposing a heightened evidentiary standard commensurate with the opportunity to conduct discovery" where parties engaged in five months of discovery).  "Were it otherwise, after all, what would be the point of the discovery?"  *Korenblum*, 195 F. Supp. 3d at 482.

Ford tries to invoke the lenient standard that applies at the start of a lawsuit, arguing that his burden "can be satisfied by the pleadings, affidavits, and affidavits of potential members of the collective action."  Mot. at 8 (internal quotation marks and citation omitted).  However, he ignores the fact that he waited fifteen months after the filing of his Complaint to file his motion, a period that included more than six months of fact discovery, which is now over.  Given the completion of fact discovery, the Court's review "may properly grow more exacting." *Korenblum*, 195 F. Supp. 3d at 482.  Specifically, at this stage, Ford cannot rely on mere "pleadings" and his own assertions.  Rather, he must show, through competent evidence, that the members of the potential collective are, in fact, similarly situated.

### 2.  Ford Has Not Satisfied His Burden.

Ford must show "a shared unlawful policy; that is, while the proposed collective need not be identical in every possible respect, its potential members must be similarly situated *with respect to the allegedly unlawful policy or practice*."  *Korenblum*, 195 F. Supp. 3d at 480 (citation omitted) (emphasis added).  Thus, as Ford recognizes, he must do more than show that the HSE professionals are similarly situated with respect to the alleged joint employment by WSP, which is not itself unlawful.  Rather, he must show that they were similarly situated with respect to the *pay practice* that he challenges: payment of a day rate without additional compensation for overtime.  *See id.*; *see also Contrera v. Langer*, 278 F. Supp. 3d 702, 715-20 (S.D.N.Y. 2017) (denying conditional certification as to potential plaintiffs who worked at properties other than those where plaintiffs worked even though they all were employed by one or more defendants).  Ford has failed to meet this burden because he has presented no evidence whatsoever of the pay practices that affected any of the workers at issue, except for those employed by QPS.

*Korenblum* is directly on point.  There, employees of information technology ("IT") vendors affiliated with Citigroup ("Citi") filed a putative action against Citi, alleging "that certain types of billing arrangements Citi maintained with its IT vendors . . . denied them overtime wages . . . ."  195 F. Supp. at 478.  After just three months of discovery, the plaintiffs moved for conditional certification of a collective that included the employees of numerous vendors.  *Id.*  The plaintiffs presented evidence that, with all of the vendors, Citi used the same billing practice—"[c]ertain hours worked by the IT employees [were] designated as 'unbillable'"—which, they claimed, resulted in the vendors failing to pay for time worked.  *Id.*

The common billing arrangement was "insufficient to warrant conditional certification of a nationwide collective . . . ."  *Id.* at 483.  Although Citi had negotiated "unbillable" hours with

8

each vendor, "it [did] not follow that each IT vendor considered 'nonbillable' hours *vis-à-vis* Citi

to be uncompensated hours *vis-à-vis* their IT workers." *Id.* "In other words, Citi's common

*billing* arrangement [did] not, in itself, 'violate the law.'" *Id.* (quoting *Myers*, 624 F.3d at 555)

(emphasis in original). Thus, the plaintiffs had to show that "an IT vendor had a corresponding

compensation scheme that treated . . . nonbillable work as uncompensated work" by offering

"evidence that a given IT vendor employed such a policy." *Id.* They failed to do so:

> Plaintiffs present no evidence at all that the . . . vendors shared a common
> plan or policy not to compensate IT workers for nonbillable hours or that
> all vendors classified such workers in the same way.

*Id.* This failure "warrant[ed] denial" of the plaintiffs' motion with respect to the vendors that did

not employ the plaintiffs. *See id.* "Put simply, the burden—minimal though it may be—is and

remains Plaintiffs' burden, and they cannot satisfy [their] burden with non-existent evidence."

*Id.* at 484 (citations omitted).

Similarly, in *Martin v. Sprint/United Mgmt. Co.,* No. 15 Civ. 5237 (PAE), 2016 WL

30334 (S.D.N.Y. Jan. 4, 2016), the plaintiffs could not justify a nationwide collective action

because they failed to demonstrate a common pay practice across multiple companies. The

plaintiffs, sales agents engaged by a telecommunications company ("Sprint") through

intermediary companies ("Sprint Partners"), sought conditional certification of a collective that

included all such agents. *Id.* at *1. In support of their motion, they submitted various Sprint

policies that applied to all Sprint Partners, as well as declarations from ten agents who

collectively worked for six Sprint Partners. *Id.* at *2, *5. Although the policies established

"some common practices that Sprint mandate[d] across Sprint Partners that [bore] . . . on the

activities of Agents," they did not "prescribe the compensation any agent [was] to be paid, or

how the Agent [was] to be classified" by the Sprint Partner. *Id.* at *6. Moreover, the plaintiffs

did not "come forward with any evidence that would situate the decision to implement the wage-

and-hour practices of which they complain above the level of the declarants' immediate employers or the intermediary companies with which some of these employers contract."  *Id.* at *10.  Absent any evidence that all the agents were subject to the same alleged pay practice, conditional certification of a collective including the agents from all of the intermediate companies was not proper.  *Id.* at *13-14.

Consistent with these decisions, other courts likewise deny conditional certification of broad collectives when the plaintiffs fail to present evidence of a pay practice that is common to all of the workers at issue.  *See, e.g., Contrera*, 278 F. Supp. 3d at 715-20 (limiting notice to locations where employees worked because of lack of evidence that policy extended to other locations); *Jibowu v. Target Corp.,* No. 17-cv-3875 (PKC) (CLP), 2020 WL 5820957, at *25 (E.D.N.Y. Sept. 30, 2020) (collecting similar cases and limiting conditional certification to stores where plaintiffs worked because of lack of evidence—outside of plaintiffs' affidavits—of a common unlawful policy elsewhere); *Boykin v. Anadarko Petroleum Corp.*, No. 18-CV-02309-MSK-STV, 2018 WL 1406878, at *2 (D. Colo. Mar. 21, 2018) (limiting notice to welders affiliated with service company that paid plaintiff, given lack of evidence of pay practices of other service companies); *Stallings v. Antero Res. Corp.*, No. 1:17-CV-01939-RM-NYW, 2018 WL 1250610, at *6 (D. Colo. Mar. 12, 2018), *adopted*, 2018 WL 2561046 (D. Colo. Apr. 16, 2018) (notice limited to workers in same positions and locations as plaintiff because plaintiff presented no evidence that workers at other locations were paid a day rate); *Guaman v. 5 "M" Corp.*, No. 13-cv-03820 (LGS), 2013 WL 5745905, at *3 (S.D.N.Y. Oct. 23, 2013) ("Plaintiff's evidence of common ownership [was] not evidence that the same unlawful employment policy was in place at each of the four restaurants . . . ."); *Zheng v. Good Fortune Supermarket Grp. (USA), Inc.*, No. 13 CV 60, 2013 WL 5132023, at *5 (E.D.N.Y. Sept. 12, 2013) (denying

conditional certification where the plaintiff failed to present evidence of a common policy or plan of time shaving).

Like the plaintiffs in these cases, Ford cannot justify broad notice because he has presented no evidence of the pay practices of HSE companies other than QPS. Though he asserts that WSP "systematically failed to pay Ford and all other HSE Day Rate Workers overtime pay" (Mot. at 6), Ford offers no evidence of a common pay scheme among the companies. In fact, he knows nothing about how other HSE companies engaged by WSP paid their workers. *See* Ford Dep. 37:16-21 ("Q. Are you aware of any other companies besides QPS that have provided HSE to WSP?  A. No, I'm not.").

The evidence that Ford does cite says nothing at all about the pay practices of any company other than QPS. For example, he cites a document that he labels "Ford and former Opt-in Plaintiff Necaise's Invoices" (Mot. at 2), but that document (actually two distinct documents) merely shows amounts paid or invoiced *by QPS*. *See* Declaration of Richard M. Schreiber (Dkt. No. 82-3) ("Schreiber Decl.") ¶ 6, Ex. C.[1]  Ford cites another document, incorrectly described as "QPS's invoices to WSP", which also is a report showing payments *by QPS* to its workers. *See* Schreiber Decl. ¶ 7, Ex. D.  Finally, Ford cites deposition testimony of a WSP witness, who Ford claims "was aware" that *QPS* paid him and another worker a day rate.[2] *See* Mot. at 3.  None of this evidence sheds any light on the allegedly common pay practices of

---

[1] The table in Exhibit C showing Ford's daily pay was not created by WSP or even received by WSP prior to discovery.  *See* Schreiber Decl. ¶ 6, Ex. C at 1-8; Declaration of Patricia Brush submitted in support of this memorandum ¶ 3.

[2] Ford's description of this testimony is misleading.  The witness made clear that he became aware of QPS's pay practices only in preparing for his deposition.  *See* Dkt. No. 82-5, Dobbs Dep. 39:14-40:2.

any other HSE company.  The absence of such evidence dooms Ford's motion as it concerns those companies' workers.

Lacking *any* evidence of these other companies' pay practices—despite having more than six months to discover them—Ford argues that the Court can simply *infer* that they paid their workers similarly to QPS.  *See* Mot. at 10.  On the contrary, a "modest" factual showing "cannot be satisfied simply by unsupported assertions."  *Myers,* 624 F.3d at 555 (internal quotation marks and citation omitted).  Regardless, Ford has given no basis to draw the inference.  Nothing in law or logic prohibits a service provider that charges its clients by the day from paying its workers by the hour.  Moreover, federal regulations specifically permit an employer to pay a day rate to employees entitled to overtime.  *See* 29 C.F.R. § 778.112.[3]  In short, regardless of how they billed WSP, the HSE providers had the ability to adopt any number of compliant pay practices when paying their workers.  Therefore, the inference that Ford urges the Court to draw is simply not valid—and it certainly cannot justify conditional certification, particularly at this late stage of the lawsuit, where Ford must prove a common pay practice through evidence, not speculation. *See, e.g., Myers,* 624 F.3d at 555; *Korenblum*, 195 F. Supp. at 483.

The cases that Ford cites are clearly distinguishable (Mot. at 10-11), including because, unlike Ford, the plaintiffs offered evidence of a common pay practice.  *See Tutein v. Esteemed Patrol Inc.*, No. 12-cv-1847 (KAM)(RER), 2013 WL 8115441, at *1-3 (E.D.N.Y. June 10, 2013) (granting conditional certification in case involving "the early notice stage" (rather than a motion

---

[3] Notably, QPS could have paid Ford overtime without affecting its profits.  For example, Ford contends that he earned $2,800 for 84 hours of work over seven days.  *See* Mot. at 2.  QPS billed WSP $600 per day for Ford's services for a total of $4,200.  *See* Schreiber Ex. C at 10.  Had QPS paid Ford a straight-time hourly rate of $26.50 and an overtime rate of $39.75, Ford would have earned $2,809.  Had QPS paid a day rate of $315 plus overtime, Ford would have earned $2,782.50.

following close of discovery), workers of just one company, and evidence regarding other workers "who also did not receive lawful wages and overtime"); *Serebryakov v. Golden Touch Transportation of NY, Inc.*, 181 F. Supp. 3d 169, 173-75 (E.D.N.Y. 2016) (plaintiffs made showing, "based on [their] personal experiences and observations and their conversations with co-workers and supervisors," that defendants compensated other bus drivers in same manner); *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 197-98 (S.D.N.Y. 2006) (court previously found that defendant determined rate and method of pay for *all* workers at issue).

In sum, Ford cannot justify conditional certification of the broad collective he alleges because he has failed to present any evidence regarding the pay practices of the HSE companies other than QPS. Indeed, he has not identified a single case in which, following discovery, a court conditionally certified a collective that included workers of multiple companies for which the plaintiff presented absolutely no evidence of their pay practices. This case thus stands in stark contrast to the decisions on which Ford relies. *Compare O'Quinn v. TransCanada USA Servs., Inc.*, 469 F. Supp. 3d 591, 605-06 (S.D. W. Va. 2020) (where "discovery [had] not yet occurred," declarations of named plaintiff and five opt-in plaintiffs, together with payroll records, showed that inspectors were paid a day rate); *Kolasa v. BOS Sols., Inc.*, No. 17-cv-1087, 2018 WL 3370675, at *2-4 (W.D. Pa. May 10, 2018) (plaintiff supported conditional certification motion with payroll records from *all* vendors engaged by defendant, which showed common pay practice); *Whitlow v. Crescent Consulting, LLC*, 322 F.R.D. 417, 421 (W.D. Okla. 2017) (authorizing notice to drilling consultants engaged by *one vendor* where plaintiff presented evidence that vendor paid several workers in same manner); *Romero v. Clean Harbors Surface Rentals USA, Inc.*, 368 F. Supp. 3d 152, 156-57, 161-62 (D. Mass. 2019) (filed early in discovery, motion was supported by declarations from plaintiff and three opt-in plaintiffs

13

employed by different service providers asserting that the defendant paid each of them a day rate with no overtime); *Halle v. Galliano Marine Serv., LLC*, No. 15-cv-5648, 2018 WL 1757343, at *1-2 (E.D. La. Apr. 12, 2018) (plaintiff was a direct employee of the defendant, which conceded that it paid a day rate); *Lockwood v. CIS Servs., LLC*, No. 3:16-CV-965-J-39PDB, 2017 WL 6335955, at *1-3 (M.D. Fla. Sept. 26, 2017) (in support of motion filed one month after complaint, plaintiff submitted five declarations from former employees of the defendants asserting that they all were paid a day rate without overtime).[4]

## B. The Court Should Apply A Two-Year Statute Of Limitations.

In addition to asking this Court to issue notice to individuals without evidence that they are similarly situated, Ford argues that a three-year statute of limitations should apply for purposes of conditional certification and requests open-ended equitable tolling. *See* Mot. at 13, 15-16. These requests also are unsupported and should be denied.

*First*, as shown in WSP's motion for partial summary judgment, Ford cannot prove that WSP willfully violated the FLSA, which is necessary to extend the default two-year limitations period to three years. *See* Dkt. No. 75. If the Court grants WSP's motion, the two-year period will apply to Ford's collective action claim. *See Callari v. Blackman Plumbing Supply, Inc.*, 988 F. Supp. 2d 261, 281 (E.D.N.Y. 2013) ("[B]ecause the Plaintiff in this case has offered no proof to establish that the Defendants either knew or recklessly disregarded FLSA requirements when it classified him as an exempt employee, the Court finds that the three-year statute of limitations

---

[4] Ford's other "day rate" cases involve obviously different procedural postures. *See Hancock v. Lario Oil & Gas Co.*, No. 2:19-cv-02140-JAR-KGG, 2019 WL 3494263, at *2 (D. Kan. Aug. 1, 2019) ("with no discovery conducted," it was "enough that Plaintiff [] *alleged* that he and the putative class were employees of Defendant and subject to . . . the day rate applicable to all company men") (emphasis in original); *Ganci v. MBF Inspection Servs., Inc.*, 323 F.R.D. 249, 254 (S.D. Ohio 2017) (defendant did not contest conditional certification).

does not apply to the Plaintiff's FLSA collective action claim."); *Freeman v. MedStar Health Inc.*, 187 F. Supp. 3d 19, 25 (D.D.C. 2016) ("[W]ithout a named plaintiff who retains a viable claim that is the same as the one to be prosecuted by members of a specific proposed collective, the Court cannot 'conditionally certify' that collective.").[5]

*Second*, Ford has failed to justify tolling.  "The Second Circuit has repeatedly cautioned that 'equitable tolling is considered a *drastic* remedy applicable only in rare and exceptional circumstances.'"  *Knox v. John Varvatos Enters. Inc.*, 282 F. Supp. 3d 644, 657 (S.D.N.Y. 2017) (collecting cases and quoting *A.Q.C. ex rel. Castillo v. U.S.*, 656 F.3d 135, 144 (2d Cir. 2011) (emphasis added)); *see also Phillips v. Generations Family Health Ctr.*, 723 F.3d 144, 150 (2d Cir. 2013) (equitable tolling applies only in "rare and exceptional circumstances") (internal quotation marks and citation omitted).  "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."  *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).  For example, "[i]n the context of conditional certification under the FLSA, equitable tolling might apply . . . where the defendant has concealed the existence of a cause of action from the plaintiffs."  *Moses v. Griffin Industries, LLC*, No. 18-cv-1200 (ALC) (OTW), 2020 WL 5813737, at *5 (S.D.N.Y. Sept. 30, 2020) (internal quotation marks and citation omitted) (denying tolling where defendant purportedly failed to comply with statutory notice obligations).

---

[5] In the cases that Ford cites in seeking a three-year period, the plaintiff's willfulness claim was still viable.  *See Iglesias-Mendoza v. La Belle Farm, Inc.,* 239 F.R.D. 363, 369 (S.D.N.Y. 2007) (willfulness was in dispute and defendant did not contest three-year notice period); *Anglada v. Linens 'N Things, Inc.*, No. 06 Civ. 12901(CM)(LMS), 2007 WL 1552511, at *8 (S.D.N.Y. May 29, 2007) (court had not decided willfulness claim); *Fasanelli v. Heartland Brewery, Inc.,* 516 F. Supp. 2d 317, 323 (S.D.N.Y. 2007) (same).

Ford has not come close to proving the "rare and exceptional circumstances" that can justify tolling.  He does not allege that WSP concealed a cause of action from a potential plaintiff.  Nor has he shown that any potential plaintiff "has been pursuing his rights diligently," but "some extraordinary circumstance stood in his way."  *See Pace*, 544 U.S. at 418.

Rather than attempt to satisfy the relevant standard, Ford merely cites routine aspects of litigation—that the parties have participated in discovery and settlement conferences and that the Court briefly delayed the initial scheduling conference—and calls them "unique."[6]  *See* Mot. at 15.  However, he fails to explain why the normal progress of the suit prevented anyone from joining it.  Without evidence that an "extraordinary circumstance" prevented a diligent plaintiff from opting in, tolling is improper.  *Pace*, 544 U.S. at 418; *Wu v. Sushi Nomado of Manhattan, Inc.*, No. 17-cv-04661 (PGG) (DF), 2019 WL 3759126, at *12 (S.D.N.Y. July 25, 2019) (denying tolling "without prejudice to the rights of potential opt-in plaintiffs to make a further application for tolling upon an appropriate showing of exceptional circumstances and the requisite diligence"); *Delijanin v. Wolfgang's Steakhouse, Inc.*, No. 18-cv-07854-LJL-KHP, 2019 WL 1760154, at *1, *8 (S.D.N.Y. Apr. 22, 2019) (denying tolling request filed in conjunction with conditional certification motion and noting that, "[s]hould equitable tolling issues arise in this case as to particular plaintiffs, the Court will timely address those issues as necessary").

In short, for the reasons explained above, only individuals who performed work for WSP within the two years preceding the Court's conditional certification decision should receive

---

[6] Notably, the Court rescheduled the conference—from February 27 to March 26, 2020—*at Ford's request* because of when Ford served the Complaint.  *See* Dkt Nos. 3, 10, 11.  Ford also argues that the time for the Court to rule on this motion supports tolling, but that argument obviously is speculative.  *See Mark v. Gawker Media LLC*, No. 13-cv-4347 (AJN), 2014 WL 5557489, at *2 (S.D.N.Y. Nov. 3, 2014) (period of 11 months "between the date Plaintiffs filed the motion and its resolution . . . was not extraordinary") (internal quotation marks omitted).

notice.  *See Hernandez v. Immortal Rise, Inc.*, No. 11-cv-4360(RRM)(LB), 2012 WL 4369746, at

*7 (E.D.N.Y. Sept. 24, 2012) ("[A]ny notice period generally shall be measured from the date of

the Court's order granting plaintiff's motion for conditional certification, not from the filing of

the complaint.") (citing *Anglada*, 2007 WL 1552511, at *26 n.5 and *Whitehorn v. Wolfgang's*

*Steakhouse, Inc.*, 767 F. Supp. 2d 445, 451 (S.D.N.Y. 2011)).

### C.    The Court Should Modify Ford's Proposed Notice Procedures and Forms.

#### 1.    Text Messages, Reminder Notices, and Live Calls Are Excessive.

Ford requests notice by mail, email, and text message, as well as reminder notice using

these same methods.  *See* Mot. at 11.  However, notice by mail and email is sufficient.  Courts

reject multiple methods in combination because they compromise the privacy interests of

putative class members, are unnecessary, and could be "interpreted as encouragement by the

court to join the lawsuit."  *Guzelgurgenli v. Prime Time Specials, Inc.*, 883 F. Supp. 2d 340, 357

(E.D.N.Y. 2012) (citing *Witteman v. Wisconsin Bell, Inc.*, No. 09-CV-440, 2010 WL 446033, at

*3 (W.D. Wis. Feb. 2, 2010)); *see also Ling Chen v. Asian Terrace Restaurant, Inc.*, 2020 WL

4041133, at *5 (E.D.N.Y. July 17, 2020) ("[T]he Court disagrees with plaintiff that a reminder

notice should be permitted in this case, and is not inclined to allow a reminder absent good

reason in light of the breadth of notice that it has permitted[.]"); *Thaxton v. Bojangles'*

*Restaurants, Inc.*, No. 1:17-cv-269, 2018 WL 11240502, at *5 (E.D. Tenn. Oct. 31, 2018)

("[M]ultiple forms of notice are generally disfavored.") (citing *Lewis v. Huntington Nat. Bank*,

No. C2-11-CV-0058, 2011 WL 8960489, at *3 (S.D. Ohio June 20, 2011) ("Courts have

generally approved only a single method for notification unless there is a reason to believe that

method will be inadequate.")); *Knispel v. Chrysler Group LLC*, No. 11-CV-11886, 2012 WL

553722, at *8 (E.D. Mich. Feb. 21, 2012) (agreeing that reminder notice is unnecessary because

"[t]he purpose of the notice is [only] to inform potential opt-in Plaintiffs of their rights" and

"[o]nce they receive that information, 'it is their responsibility to act as they see fit'") (quoting *Wlotkowski v. Michigan Bell Tele. Co.*, 267 F.R.D. 213, 220 (E.D. Mich. 2010)); *Robinson v. Ryla Teleservices, Inc.*, No. 11-CV-131, 2011 WL 6667338, at *4 n.7 (S.D. Ala. Dec. 21, 2011) (notice that "can be interpreted as encouragement by the court to join the lawsuit . . . would be at odds with the purpose for judicial notice") (internal citation and quotation marks omitted); *Smallwood v. Illinois Bell Tel. Co.*, 710 F. Supp. 2d 746, 753-54 (N.D. Ill. 2010) ("[A] reminder is unnecessary and potentially could be interpreted as encouragement by the Court to join the lawsuit.") (internal citation and quotation marks omitted).

Additionally, Ford submits scripts for follow up telephone calls if email is returned as undeliverable.  WSP consents to follow up calls that are scripted to avoid solicitation, but only if *all* forms of notice are returned as undeliverable and no forwarding information is provided.  If someone receives notice by any of the authorized methods or notice can be resent, then a follow up call should not be permitted because of the risk of solicitation.  Accordingly, production of telephone numbers should not be ordered unless a need for a follow up call arises.  *See Snead v. EOG Resources, Inc.*, No. 5:16-cv-1134-OLG, 2017 WL 6294875, at *6 (W.D. Tex. Feb. 14, 2017) (authorizing discovery of phone numbers only for those "whose mailed notices are returned as undeliverable and who cannot be reached by email"); *Schmidt v. Charleston Collision Holdings Corp.*, No. 2:14-cv-01094-PMD, 2015 WL 3767436, at *7 (D.S.C. June 17, 2015) (denying request for telephone numbers based "on speculation that some potential plaintiffs' notices will be returned as undeliverable . . . given the greater intrusion that a telephone call entails and the open-ended nature of the resultant communication"); *Brand v. Comcast Corp.*, No. 12-cv-1122, 2012 WL 4482124, at *9 (N. D. Ill. Sept. 26, 2012) (permitting the plaintiff to request telephone numbers "as needed" and subject to a protective order limiting use of number

"to tracking purposes."  "[P]eople who appear to have no or little interest in joining the lawsuit should not be faced with the possibility of being contacted by telephone or having additional personal information requested.") (internal quotation marks and citation omitted).

### 2.  Ford's Forms Are Misleading And Incomplete.

Ford's proposed notice and consent forms must be modified because they are misleading. The proposed notice improperly assumes an employment relationship between WSP and notice recipients—an issue in dispute.  For example, it misleadingly states that "WSP contends it properly paid its HSE workers . . . ."  *See* Dkt. No. 82-7 at 2.  In fact, WSP did not pay Ford or any other HSE professional engaged through a third-party company.  The notice should not suggest otherwise.  *See Hoffman-La Roche*, 493 U.S. at 174 (in collective actions, courts "must take care to avoid even the appearance of judicial endorsement of the merits of the action").

The notice also neglects to inform recipients about their potential discovery and trial obligations upon consenting to become party plaintiffs.  Such information should be included to enable recipients to make fully informed decisions about whether to opt in.  *See Aguilo v. Vails Gate Cleaners, Inc.*, 2020 WL 3545558, at *8 (S.D.N.Y. June 30, 2020) (requiring plaintiff to modify notice to inform putative class members that "if they opt into the lawsuit, they may be asked to (1) appear for depositions; (2) respond to written discovery; (3) testify at trial; and (4) pay litigation costs.  This reflects the balance typically struck by courts in this District.") (citing *Bah v. Shoe Mania, Inc.*, No. 08 Civ. 9380 (LTS)(AJP), 2009 WL 1357223, at *4 (S.D.N.Y. May 13, 2009) (ordering plaintiff to modify the notice to add similar language)).

WSP has submitted proposed forms that are neutral and appropriate.  *See* Sekoski Decl. ¶ 3, Ex. A.  WSP respectfully requests that the Court adopt its proposals or, alternatively, order that the parties confer and attempt to reach agreement.  *See Taylor v. R.J.T. Motorist Service, Inc.*, No. 19-CV-01155 (PMH), 2020 WL 4937483, at *6 (S.D.N.Y. Aug. 24, 2020) (ordering the

parties to "meet and confer regarding the content for the notices and consent form" where "the parties disagree[d] on the proper content of the notices and consent form"); *Andon v. SDG Properties, Inc.*, 2018 WL 3970910, at *2 (S.D.N.Y. Aug. 20, 2018) (ordering parties to confer regarding notice).

## IV.   CONCLUSION

For the foregoing reasons, WSP respectfully requests that the Court limit conditional certification and authorize notice only to HSE professionals provided by QPS to WSP within two years of the date of its order.

Dated: April 16, 2021

Respectfully submitted,

AKIN GUMP STRAUSS HAUER & FELD LLP

s/ *Gregory W. Knopp*
Gregory W. Knopp
New York Bar No. 2892909
1999 Avenue of the Stars, Suite 600
Los Angeles, CA 90067
Telephone:       310.229.1000
Facsimile:       310.229.1001
gknopp@akingump.com

Nathan J. Oleson (*pro hac vice*)
Joshua K. Sekoski (*pro hac vice*)
Zara H. Shore (*pro hac vice*)
2006 K Street, NW
Washington, DC 20006
Telephone:       202.887.4000
Facsimile:       202.887.4288
noleson@akingump.com
jsekoski@akingump.com
zshore@akingump.com

*Counsel for Defendant WSP USA Inc.*