**JOSEPHSON DUNLAP LLP**
LAWYERS FOR THE WORKERS®

**MICHAEL A. JOSEPHSON**
PARTNER

August 1, 2022

**VIA ECF**
The Honorable Lorna G. Schofield
United States District Judge, SDNY
Thurgood Marshall Courthouse
40 Foley Square
New York, New York 10007

      Re: *Harold Ford v. WSP USA Inc.*, Case No. 19 Civ. 11705 (LGS)

Dear Judge Schofield:

      We represent the Plaintiff and Opt-In Plaintiffs in the above referenced matter. We write with the consent of defendant WSP USA Inc. (WSP) to respectfully request judicial approval of the Parties' settlement agreement attached hereto as **Exhibit (Ex.) 1**. The agreement resolves the claims of Plaintiff Harold Ford and Opt-In Plaintiffs Cody Beam, Mark Compton, Jennipher Easterling, Ruben Followell, James Ford, Patrick Guzzetta, James Loury, Michael Minar, Dan Pulattie, Keith Scruggs, and Henry Benson Terrell (collectively "Plaintiffs") for the total amount of $97,500.00. One half of this is for the claims of Plaintiffs and one half is for separately negotiated attorneys' fees. For the reasons outlined below, the Court should approve the settlement as a fair and reasonable compromise of Plaintiffs' claims against WSP.

## BACKGROUND & PROCEDURAL HISTORY

      Josephson Dunlap, LLP (JD), Bruckner Burch, PLLC, and Fitapelli & Schaffer, LLP (F&S) were retained by Harold Ford (Ford) who provided services to WSP as an HSE Consultant. Ford filed this action on December 20, 2019. *See* ECF No. 1. Ford alleged that WSP violated the FLSA by misclassifying him and other HSE consultants as independent contractors and paying them a day rate with no overtime compensation.

      WSP filed an original answer denying all liability. *See* ECF Nos. 14. WSP moved to transfer the case to the Eastern District of Texas. ECF Nos. 23, 33. This motion was denied. The Parties conducted written discovery, took depositions, and unsuccessfully engaged in the Court's Mediation Program. Ford moved for FLSA notice and WSP moved for Summary Judgment. The Court granted in part Ford's Motion for FLSA Notice and denied WSP's Motion for Summary Judgment. ECF No. 91. Notice was sent and 11 Plaintiffs opted into the collective action.

Following the close of the opt-in period, the Parties engaged in weeks of informal settlement negotiations which resulted in the executed Settlement Agreement, attached hereto as Ex. A.

The Settlement allocates the settlement fund to Plaintiffs on a pro rata basis based on actual damages. *See* **Ex. 1**, Settlement Agreement, Ex. A. The Settlement Agreement also provides for a $5,000 service award for Ford. *Id.*

## THE SETTLEMENT SHOULD BE APPROVED

Pursuant to *Cheeks v. Freeport Pancake House, Inc.*, "stipulated dismissals settling FLSA claims with prejudice require the approval of the district court." *See* 796 F.3d 199, 206 (2d Cir. Aug. 7, 2015); *see also Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012); *Mosquera v. Masada Auto Sales, Ltd.*, No. 09 Civ. 4925, 2011 WL 282327, at *1 (E.D.N.Y. Jan. 25, 2011). "Generally, there is a strong presumption in favor of finding a settlement fair, as the court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Matheis v. NYPS, LLC*, No. 13 Civ. 6682, 2016 WL 519089, at *1 (S.D.N.Y. Feb. 4, 2016). "Because *Cheeks* itself did not define the contours of the approval analysis or protocols it envisioned, most district courts within our Circuit turn to the multi-factor test set out in *Wolinsky* to evaluate whether an FLSA wage and hour settlement is fair and reasonable." *Cabrera v. CBS Corp.*, No. 17 Civ. 6011, 2019 WL 502131, at *4 (S.D.N.Y. Feb. 8, 2019).

The court in *Wolinsky* set forth the following criteria for determining whether a proposed settlement is fair and reasonable: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *Wolinsky*, 900 F. Supp. 2d at 335. Here, the proposed settlement, which provides for the payment of $48,750.00 to the Plaintiffs ($43,750 in settlement awards and a $5,000.00 service award to Ford) was achieved after hard fought and arm's-length negotiations between experienced counsel. Therefore, the settlement is fair and should be approved.

### Factor 1: The Range of Recovery

The first factor weighs in favor of approval. Based on estimated damages calculations, Plaintiffs' range of possible recovery was between $0 and $124,000.00. Based on the litigation risks discussed below, the total settlement of $48,750.00 is a fair and reasonable result. The total combined award of $43,750 (without service award) is roughly 70% of the settlement participants' 3-year unliquidated damages of $62,160.70. **Ex. 2**, Schreiber Decl., ¶19. This amount is almost 3.5 times the Plaintiffs' 2-year unliquidated damages ($12,592.94). *Id.* This amount is fair and reasonable and in-line with cases similar to this one. *Id.*

### Factors 2 & 3: Avoiding Burdens & Litigation Risk

The second and third factors also favor approval. If the Parties were to continue litigation, the Parties would need to conduct further discovery, including depositions of opt-

in plaintiffs and corporate representatives for WSP. This would require further transactional costs for both sides. In addition, WSP would move to decertify the collective action. What remains of the case following such a motion would proceed to trial. As such, further litigation would require significant time and expense.

In addition, both sides face serious litigation risks relating to damages and liability. Here, a trial on the merits would involve significant risks as to liability. Even if Plaintiffs could maintain a collective throughout trial, they would have to defeat WSP's argument that HSE consultants were properly classified as independent contractors. Independent contractor cases are, almost by nature, risky because "employee status is very fact dependent." *Carrell v. Sunland Const., Inc.*, 998 F.2d 330, 334 (5th Cir. 1993) (finding welders to be independent contractors as a matter of law). Workers can, and do, lose these cases in Court. *See, e.g., Safarian v. Am. DG Energy, Inc.*, No. 17-1641, 2018 WL 1617660, at *5 (3d Cir. Apr. 4, 2018) (engineer who worked for defendant "almost exclusively," five days per week over the course of three years, was an independent contractor); *Karlson v. Action Process Serv. & Private Investigations, LLC*, 860 F.3d 1089 (8th Cir. 2017) (process server who worked for process serving company for more than 6 years was an independent contractor, not an employee); *Yue Yu v. McGrath*, No. 14-1842, 2014 WL 7384328 (3d Cir. Dec. 30, 2014) (hourly worker was independent contractor not employee); *Alexander v. Avera St. Luke's Hosp.*, 768 F.3d 756, 760 (8th Cir. 2014) (long term hospital worker was independent contractor, not employee); *Thibault v. Bellsouth Telecommunications, Inc.*, 612 F.3d 843 (5th Cir. 2010) (hourly worker employed in emergency response was independent contractor and had no breach of contract claim); *Ross v. Jack Rabbit Servs., LLC*, No. 3:14-CV-44-DJH, 2016 WL 7320890, at *3–4 (W.D. Ky. Dec. 15, 2016) (court weighed the risk in plaintiffs proving the economic realities test to establish they were "employees" as it has "had varying results in disputes over employment status" and approved settlement); *Gentrup v. Renovo Servs.*, LLC, No. 1:07CV430, 2011 WL 2532922, at *3 (S.D. Ohio June 24, 2011) ("The risks posed by Defendants' position on the independent contractor issue, and the motor carrier affirmative defense to Plaintiffs' claims, justify a compromise settlement which provides a settlement payment to all Plaintiffs.").

Even cases approved by the Department of Labor and the Solicitor's Office are lost. The Department of Labor has lost several independent contractor cases. In one case, the Department of Labor asserted the workers were owed $6 million in back wages. But when the case went to Court, the workers lost outright and got nothing. *Gate Guard Servs. L.P. v. Department of Labor,* No. CIV.A. V-10-91, 2013 WL 593418 (S.D. Tex. Feb. 13, 2013). Later, the Department of Labor was sanctioned for bringing the case. *Gate Guard Servs., L.P. v. Perez,* 792 F.3d 554, 556 (5th Cir. 2015). Similarly, in *Herman v. Express Sixty-Minutes Delivery Serv., Inc.*, more than 100 contractors got nothing when the Department of Labor lost their case in court. *Herman v. Express Sixty-Minutes Delivery Serv., Inc.*, 161 F.3d 299, 302 (5th Cir. 1998). Although Plaintiffs believe these cases are distinguishable from this case, and that he could ultimately establish WSP's liability, this would require significant factual development and considerable risk. Furthermore, even if Plaintiffs ultimately prevailed on the issue of liability, Plaintiffs would still need to prove the amount of damages Plaintiffs suffered.

As a result, this factor supports approval of this settlement.

### Factors 4 & 5: Arm's Length Negotiation & Experience

The fourth and fifth factors also weigh in favor of approval. Plaintiffs' counsel and WSP's counsel have negotiated at arm's length, as evidenced from the length of the negotiation and litigation process, and both Parties' counsel have significant experience handling wage and hour claims. *See generally*, **Ex. 2**, Affidavit of Richard Schreiber; *see, e.g.*, *Hughes v. Gulf Interstate Field Servs., Inc.*, 878 F.3d 183 (6th Cir. 2017) (reversing trial court's grant of summary judgment in favor of defendant); *Roussell v. Brinker Int'l, Inc.*, 09-20561, 2011 WL 4067171 (5th Cir. Sept. 14, 2011) (affirming jury verdict in FLSA collective action); *Belt v. EmCare, Inc.*, 444 F.3d 403 (5th Cir. 2006) (affirming summary judgment in favor of a nationwide class of FLSA plaintiffs); *Kurgan v. Chiro One Wellness Ctrs., LLC*, No. 10-CV-1899, 2015 WL 1850599, at *4 (N.D. Ill. Apr. 21, 2015) ("the firms involved in this case on the Plaintiffs' side [including Bruckner Burch] are **among the most experienced and best regarded in this specialized practice area**."). WSP's Counsel is also experienced in handling wage and hour matters, including before this Court. *See, e.g.*, *McGreevy v. Life Alert Emergency Response, Inc.*, 258 F. Supp. 3d 380, 382 (S.D.N.Y. 2017) (Schofield, J.) (noting prior approval of wage and hour class action settlement involving client represented by Gregory W. Knopp).

In addition, there is no evidence of fraud or collusion, as the settlement amount represents a significant percentage of Plaintiffs' potential recovery and was obtained after two settlement conferences.

### The Court Should Approve of the Formula and Service Awards

The settlement allocation formula is fair and reasonable and should be approved. Specifically, the pro rata allocation formula takes into consideration the actual damages each participant may be able to claim based on their days and estimated hours worked within a three-year limitations period. The formula assumes a 12-hour work day, which was the HSE consultants' typical shift. As a result, the formula is based upon the facts of this case and is a fair allocation of the net settlement.

The Court should also approve a total sum of $5,000.00 in service awards to the Named Plaintiff who sat for deposition, provided invaluable information, and assisted with the prosecution of the case, as this award recognizes the service he provided to the overall group of Plaintiffs in this case. Such service award are routinely approved by Courts in this District. *See, e.g.*, *Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693, 2013 WL 5492998, at *12 (S.D.N.Y. Oct. 2, 2013) (Gardephe, J.) (awarding service awards to each named Plaintiff); *Rotthoff v. New York State Cath. Health Plan, Inc.*, No. 19 Civ. 4027, 2021 WL 1310220, at *3 (E.D.N.Y. Apr. 8, 2021) (awarding $2,500 to named plaintiff in multi-plaintiff collective settlement); *Barsa v. Beacon Health Options, Inc.*, No. 19 Civ. 1646, 2020 WL 7240345, at *1 (S.D.N.Y. Sept. 28. 2020) (awarding service award to named plaintiff in multi-plaintiff collective settlement).

### No Red-Flag Issues Are Present In This Settlement

The red-flag issues identified in *Cheeks* are not present here. First, the agreement does not have a confidentiality or non-disparagement clause. Second, the general release only applies to Named Plaintiff Ford in consideration for his service award.

As will be discussed below, Plaintiffs' Counsel's requested attorneys' fees are not excessive and were separately bargained for aside from the Plaintiffs' recovery. As a result, Plaintiffs respectfully request that the Court find that the settlement agreement is a "fair and reasonable" compromise of their claims against Defendants and approve the settlement.

## THE COURT SHOULD APPROVE THE SEPARATELY AGREED UPON ATTORNEYS' FEES AND COSTS

Before beginning an analysis of whether to approve the agreed upon fee, it is important to note the Parties negotiated attorney's fees separately from the amount Class receives. The amount requested for attorneys' fees is fair and reasonable and was separately negotiated by the Parties. **Ex. 1**. It was also agreed upon in the retainer agreement, that Counsel could separately negotiate fees sufficient to account for the risks associated with this representation. Plaintiffs' Counsel has worked without any compensation to date, and Plaintiffs' Counsel's fee has been wholly contingent upon the result achieved. Consistent with the fee agreement between Ford and Class Counsel, the Parties calculated attorney's fee by *adding* of the Class' amount to the Class award to arrive at the total settlement. The Parties *did not* negotiate a total amount for the Class and subtract a percentage. Therefore, the attorney fees negotiated by the Parties never reduced the Class' award. As a necessary corollary, a decrease in the fee award will not result in an increase in the amount of the Net Settlement Fund. Perhaps more to the point, the attorney's fees called for under the Settlement are reasonable and there is no reason to reject the parties' agreement on this point.

Supreme Court precedent not only permits but endorses settlement of attorney's fees in aggregate litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("Ideally, of course, litigants will settle the amount of a fee."). Recent FLSA authority suggests that when they do under circumstances that exist here, that should end the matter. *Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1027 (8th Cir. 2019) ("parties [are] entitled to settle the attorney fee issue, and no law g[ives a] district court authority to interfere with that unconditional right"). The Parties reached the agreed upon fee after reaching a settlement that exceeds the average overtime settlement, ensures class members who decide to accept it will be paid promptly (indeed, immediately). To the extent approval is necessary, it should be given here.

There is no benefit to the Plaintiffs if the Court were to reduce the amount of attorneys' fees. As a result, "sliding plaintiffs' counsel's fee … down by even large amounts" would merely "increase the total funds that revert to [WSP], but would not lower or raise the recovery of any … Plaintiff by even a penny." *Warren v. Cook Sales, Inc.*, No. CV 15-0603-WS-M, 2017 WL 325829, at *8 (S.D. Ala. Jan. 23, 2017) (awarding the % fee requested in the settlement agreement).

Any reduction in the fee, therefore, would not balance the scales or increase the benefits to the Plaintiffs but instead would merely be punitive against Plaintiffs' Counsel. Nothing in the history of this action would justify such a measure against counsel, nor has any party argued for a reduction. Indeed, every party to this litigation bargained for this result. Any concern by the Court that this Settlement is made at the expense of the Plaintiffs is allayed by the terms of agreement and the efforts of all Parties.

"While attorney's fee settlements in FLSA cases may be problematic … where the fee award adversely impacts the plaintiffs' recovery, no such concerns exist here." *Warren*, 2017 WL 325829, at *8. "As such, the sound policy justifications counseling in favor of judicial reasonableness review of the attorney's fee portion of FLSA settlements are not implicated." *Id.* The agreed upon fee should be approved.

Regardless, due to the complexity, motion practice, and discovery conducted, Plaintiffs' Counsel lodestar well exceeds the separately agreed upon fee award. Through the date of this filing, Plaintiffs' counsel has spent well over 140 attorney hours litigating and settling this action. **Ex. 2**, ¶21-22. Almost all of Plaintiffs' counsel's cases have been taken on pure contingency, including all out-of-pocket costs and expenses. Thus, when Plaintiffs' counsel's lawyers spend time on contingency matters (such as F&S), they do so at a significant risk for the firm. For example, in *Rios et al. v. Louya Corp. d/b/a Jacques Brasserie et al.*, No. 14 Civ. 6800 (GHW) (S.D.N.Y.), plaintiffs' counsel obtained a verdict of $1,044,512.62 after a five-day trial. However, due to the defendants' bankruptcy filings, the plaintiffs and our firm have recovered less than two percent (2%) of the damages and attorneys' fees and costs awarded to them by the court. This highlights the risks associated with wage and hour matters and illustrates that Plaintiffs' counsel stood to gain nothing in the event the case was unsuccessful. Moreover, in Plaintiffs' Counsel's experience, wage and hour cases are inherently high-disk due to often unexpected closings and collection issues.

As such, in reviewing Plaintiffs' Counsel's fees in this matter and the risks involved, it is clear that they are both fair and reasonable. Moreover, under the "lodestar" method, the Court "scrutinizes the fee petition to ascertain the number of hours reasonably billed to the [plaintiff] and then multiplies that figure by an appropriate hourly rate." *See Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). Even under the "lodestar" method, Plaintiffs' Counsel's fee award is more than reasonable, as they currently have a lodestar well over the amount incurred. *See Castagna v. Madison Square Garden, L.P.*, Case No. 09 Civ. 10211 (LTS) (HP), 2011 WL 2208614, at *10 (quoting *In re Telik*, 576 F. Supp. 2d 570, 590 (S.D.N.Y. 2008) ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts . . .").

Before beginning an analysis of whether to approve the agreed upon fee and costs, it is important to note the Parties negotiated attorney's fees separately from the amount Plaintiffs receive. The Parties calculated attorney's reduced fee by adding of the Plaintiffs' amount to the Plaintiffs' award to arrive at the total settlement. The Parties did not negotiate a total amount for the Plaintiffs and subtract a percentage. Therefore, the attorney fees negotiated by the Parties never reduced the Plaintiffs' award. As a necessary corollary, a decrease in the fee award will not result in an increase in the amount of the Net Settlement Fund. Perhaps more to the point, the attorney's fees called for under the Settlement are reasonable and there is no reason to reject the parties' agreements on this point. *See Cruz-Vasquez v. Sanders Farms, Inc.*, No. CV 615-048, 2016 WL 4492864, at *2 (S.D. Ga. Apr. 21, 2016) (citing *Hill v. Unifirst Corp.*, No. 6:13-cv-624, 2013 WL 4495130, at *3 (M.D. Fla. Aug. 20, 2013) (providing that attorneys' fees and costs were reasonable because they were agreed upon separately and they represented the full amount plaintiff's counsel would be paid); *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009)).

Supreme Court precedent not only permits but endorses settlement of attorney's fees in aggregate litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("Ideally, of course, litigants will settle the amount of a fee."). Recent FLSA authority suggests that when they do under circumstances that exist here, that should end the matter. *Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1027 (8th Cir. 2019) ("parties [are] entitled to settle the attorney fee issue, and no law g[ives a] district court authority to interfere with that unconditional right"). In an Eighth Circuit opinion, the Court found that "any process of judicial review and approval of stipulated attorneys' fees in the event of a settlement of civil rights litigation is more deferential than resolving attorneys' fees in a disputed case." *Melgar v. OK Foods*, 902 F.3d 775 (8th Cir. 2018) (reversing district court's reduction of attorney fees from the agreed-upon settlement amount in an FLSA action).

To the extent approval is necessary, it should be given here.

Lastly, Plaintiffs' counsel expended $3,500.00 in litigation costs and expenses. *See* **Ex. 2.** These costs are commonly reimbursed by courts in this District. *See, e.g., Chamoro v. 293 3rd Café Inc.*, No. 16 Civ. 339 (PAE), 2016 WL 57119799, at *4 (S.D.N.Y. Sept. 30, 2016); *Hui Lan Weng v. Fancy Lee Sushi Bar & Grill, Inc.*, No. 15 Civ. 5737, 2017 WL 5564892, at *3 (E.D.N.Y. Nov. 3, 2017) (holding that court filing fees, process servers, transcripts, travel, and other litigation costs are generally recoverable if they are necessary for the representation of the client), report and recommendation adopted, 2017 WL 5564593 (E.D.N.Y. Nov. 18, 2017). As such, Plaintiffs' Counsels' attorneys' fees are fair and reasonable and should be approved by the court.

\*   \*   \*

For the above reasons Plaintiff respectfully requests that the Court approve the attached Settlement Agreement.

We thank the Court for its time and consideration.

Respectfully yours,

*/s/ Michael A. Josephson*

cc: Counsel of record (via ECF).